[L. A. No. 4237. Department One.—June 3, 1918.]

## E. CONDE JONES, Appellant, v. TITLE GUARANTY AND TRUST COMPANY (a Corporation), Respondent.

APPEAL—BILL OF EXCEPTIONS—SERVICE AND SETTLEMENT—OPENING DEFAULT.—Where a proposed bill of exceptions was not served in time, but the trial court granted relief from the default and settled the bill, the supreme court, on appeal from a judgment, will disregard the objection that the proposed bill was not served in time, and consider the merits of the appeal.

ID.—RELIEF FROM DELAY IN SERVICE.—It is well settled that relief may be granted from delay in service of a proposed bill of exceptions.

DEFAULT—ORDER SETTING ASIDE FAVORED.—The supreme court favors orders excusing defaults and permitting controversies to be heard on their merits, and such orders are rarely reversed unless for clearly appearing abuse of discretion.

PARTNERSHIP—BROKER AND PURCHASER — SHARING PROFITS — RELATION NOT ESTABLISHED.—An agreement between a purchaser of an unexpired lease and brokers who procured the purchase that they were to receive a compensation measured by a proportion of the profits to be realized by procuring subtenants, without any arrangement for sharing losses, does not constitute a partnership with authority in each of the parties to bind the others.

AGENCY — ESCROW—BROKER NOT AUTHORIZED TO CHANGE ESCROW INSTRUCTIONS—EVIDENCE.—Under an agreement for the purchase of a lease where a broker for the purchaser had authority to deposit the consideration for the purchase in escrow, one of the conditions of which was that the brokers for the vendor were to obtain subtenants for the purchaser on leases, the proposed terms of which were specified in the escrow instructions, the evidence, in an action by the purchaser against the escrow-holder for damages for alleged disregard of the instructions, is examined and found not to warrant a finding that the broker for the purchaser acted "as an agent for the plaintiff" in modifying the escrow instructions.

Id.—Broker's Authority to Make Agreement—No Implied Power to Cancel or Vary.—No power in a broker or agent to cancel or vary an agreement, or to waive or give up rights of his principal, is to be inferred from a general power to make the original agreement.

Escrow Instructions — Action for Violation — Damages.—Where plaintiff's money or property, deposited in escrow upon certain conditions, is disposed of without compliance with those conditions, he is entitled in an action against the escrow-holder, to recover such damages as he may have suffered through the defendant's unwarranted act.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John W. Shenk, Judge.

The facts are stated in the opinion of the court.

W. G. Van Pelt, and Wilbur Bassett, for Appellant.

E. W. Sargent, G. W. Cooke, and Tanner, Odell & Taft, for Respondent.

SLOSS, J.—The plaintiff appeals from a judgment in favor of the defendant.   The purpose of the action was to recover damages from the defendant, a trust company, for its alleged disregard of certain instructions under which there had been deposited with it, as escrow-holder, a check for two thousand dollars and three promissory notes.   The appellant contends that the evidence does not support the findings upon which the court gave its judgment against him.

The respondent makes a preliminary objection to the consideration of the bill of exceptions upon the ground that the proposed bill was not served in time.   That there was a delay beyond the period specified in the code is conceded.   But the plaintiff, upon serving his proposed bill, served and filed a notice of intention to move to be relieved from his default under section 473 of the Code of Civil Procedure.   Affidavits supporting and opposing the application were presented and considered, and the court granted the motion, and settled the bill.   That relief may be granted from delay of this kind is well settled.   (*Stonesifer* v. *Kilburn*, 94 Cal. 33, [29 Pac. 332]; *Banta* v. *Siller*, 121 Cal. 414, [53 Pac. 935].)   This court has always looked with favor upon orders excusing defaults and permitting controversies to be heard upon their

merits. Such orders are rarely reversed, and never "unless it clearly appears that there has been a plain abuse of discretion." (*O'Brien* v. *Leach*, 139 Cal. 220, [96 Am. St. Rep. 105, 72 Pac. 1004].) It cannot be said that there was an abuse of discretion here, and we proceed, therefore, to a consideration of the merits of the appeal.

The transaction in controversy arose out of negotiations for the acquisition by the plaintiff of the unexpired term of a lease on certain real property in the city of Los Angeles. R. L. Tatum and H. C. Wood were real estate agents. They had brought to Jones, the plaintiff, a proposition for acquiring the lease, which was owned by the Spring Street Investment Company. The understanding, as between Jones, Tatum, and Wood, was that Jones was to pay the amounts necessary for the purchase of the lease, and that any profits remaining after the repayment to Jones of all advances made by him were to be divided equally between Jones, Tatum, and Wood. Brown Brothers Company were the brokers representing Spring Street Investment Company. The purchase price, consisting of plaintiff's check for two thousand dollars and promissory notes for five thousand dollars additional, signed by plaintiff, Wood, and Tatum, were deposited with the defendant, a trust company, on August 27, 1913, under written instructions. The escrow instructions accompanying the deposit were signed in the name of "Frances Griffes, by H. C. Wood." Miss Griffes was not really a party to the transaction, but it was understood that her name should be used, and that it should be signed by Wood. The instructions declared that the signer handed the check, etc., to the defendant to be subject to the order of Brown Brothers Company on the following conditions: Brown Brothers Company were to secure the contemplated lease on given terms; to secure for the signer a reliable tenant for the north sixteen feet of the property for five years at a given rental, and also to secure a reliable tenant for the balance of the property for three or five years at a prescribed rental. The form of the lease was to be subject to the approval of E. Conde Jones, the plaintiff, who was also to pass upon the title to the property. A few days later Wood handed to the defendant an amended letter of instructions, which eliminated the conditions requiring Brown Brothers Company to procure subtenants for the proposed purchaser of the lease, and provided that the form of the lease and the

title to the property were to be subject to the approval of Frances Griffes. This second paper, like the first, was signed by Wood in the name of Frances Griffes.

The conditions of the amended instructions were performed, and the defendant delivered the check and notes to Brown Brothers Company. There was, however, no compliance with the provisions of the original instructions requiring the lease to be approved by Jones, nor, apparently, with the requirement that subtenants should be obtained. The real controversy, therefore, narrows itself down to the question whether the plaintiff was bound by the amended instructions, or whether, as he claims, he was entitled to stand upon the instructions as originally given. The court found that the plaintiff and Tatum and Wood delivered to the defendant the original instructions, and that afterward, and within ten days, they also delivered to the defendant the amended instructions, such delivery being made through Wood acting as agent for the plaintiff and Tatum. The appellant disputes the sufficiency of the evidence to support the findings.

The evidence shows that the plaintiff was present with Tatum and Wood in the office of the defendant when the first paper of instructions was signed and turned over to the defendant by Wood. He was not present when the amended instructions were given, and there is no evidence to show that he had any knowledge of them. He was not bound by the alteration in the terms of the escrow deposit, unless he conferred actual or ostensible authority upon Wood to make the change. We think the evidence was not such as to support the claim, which is one of those made by the respondent, that Jones, Tatum, and Wood were partners in the transaction, and that each, therefore, had authority to bind the others. The uncontradicted evidence shows that the deal was being made by Jones, that he was furnishing all the money, and that there was no arrangement for a sharing of the losses. Tatum and Wood were merely rendering services as real estate agents or brokers, and for these services they were to receive a compensation measured by a proportion of such profits as might be realized. Such a venture does not constitute a partnership (*Coward* v. *Clanton,* 122 Cal. 451, [55 Pac. 147]), and there was certainly nothing in the facts of which defendant had cognizance to make it appear that such a relation existed.

Apart from the question of partnership, there can be no ground for a claim that Jones in fact authorized Wood to modify the terms of the first escrow paper. Nor, we think, did the evidence warrant an inference of ostensible authority to make the change. Both papers were signed by Wood. It is conceded on all sides that Miss Griffes, in whose name he signed, had no real connection with the transaction. So far as the questions here arising are concerned, the situation is the same as if Wood had signed the papers in his own name. The testimony on behalf of the plaintiff tended to show that the defendant was informed, at the time of the deposit, that Jones was the real party in interest, and that the obtaining of the subleases was a material part of the consideration upon which he agreed to pay for the lease. There was, to be sure, a conflict on this point. L. W. McAtee, escrow clerk of the defendant, who handled the transaction in its behalf, testified that Jones said nothing regarding his being principal in the deal. But all the testimony is to the effect that Jones, Wood, and Tatum came to the office of the defendant together, and that the original instructions were signed and presented in the presence of all three. That Jones was in some way interested in the deal was apparent to McAtee, not only from this circumstance, but from the fact that Jones was the maker of the check deposited, and was also one of the signers of the promissory notes. The court was, no doubt, authorized to infer that the conduct of the plaintiff was such as to bind him to the terms of the original deposit. For the purposes of this transaction Jones made Wood at least his ostensible agent. But the agency was a special one, and there was nothing to justify an assumption on the part of the defendant that Wood's authority went any further than to make and consummate the contract by which the papers were first deposited. "Presumptively an agent is employed to make contracts, not to rescind or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his principal, nor to increase his obligations and liabilities for the mere benefit of third persons, unless the principal knew or approved of such modifications by the agent." (31 Cyc. 1387, 1388, and cases cited.) When Jones authorized Wood to make a certain contract for him, and deposited his check

and notes to be turned over in accordance with such contract, he did not thereby authorize Wood or the defendant to dispose of the check and notes under a different and less favorable contract. Certainly it would not be contended that Wood had ostensible authority to so change the terms of the deposit as to substitute for the lease originally contemplated a lease of other property upon other terms. No more can it be said that Wood had ostensible authority to alter the material provision regarding the obtaining of subleases. If these views be correct, the finding that the delivery of the amended instructions was made through Wood, "acting as agent for the plaintiff," has no support in the evidence.

If plaintiff's property, deposited with the defendant upon certain conditions, was disposed of without compliance with those conditions, the plaintiff was, of course, entitled to recover such damages as he may have suffered through defendant's unwarranted act. The defendant contends that the plaintiff showed no damage. But this claim is obviously without merit. There is evidence that plaintiff's check for two thousand dollars was cashed, and the money paid out by the defendant under the amended instructions. Apart from any question of the notes, it needs no argument to show that the plaintiff suffered damage by being deprived, without his authority or consent, of the money represented by his check.

The judgment is reversed.

Shaw, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.