[S. F. No. 18017. In Bank. Apr. 21, 1950.]

HARRY RIANDA et al., Appellants, v. SAN BENITO TITLE
GUARANTEE COMPANY (a Corporation), Respondent.

Phil F. Garvey, John J. Jones and Julia M. Easley for Appellants.

Royal E. Handlos for Respondent.

GIBSON,. C. J.—Plaintiffs appeal from a judgment for defendant in an action to recover damages arising from the alleged negligence of defendant in failing to present for payment a check delivered to it in connection with a real estate transaction.

On July 3, 1946, Marian Hublit, a real estate agent and one of the plaintiffs herein, wrote a letter to defendant at Hollister requesting it to ''prepare title search, necessary deed and deed of trust etc. covering the sale of 608 acres in San Benito County by Harry Rianda to Nick Daskarolis.'' She enclosed an unsigned copy of a ''Deposit Receipt'' or sales agreement on which the names of Daskarolis and plaintiff Rianda were typed after the word ''signed'' at the appropriate places for their signatures. Under the terms of the agreement, the total sales price was $91,200, payable $30,000 within 60 days, and the balance by installment note secured by a deed of trust. The agreement acknowledged receipt of a deposit of $5,000. (This sum was apparently retained by plaintiffs as a forfeiture and is not involved in this action.) The agreement further provided that the deposit should be increased to 10 per cent of the purchase price upon ''acceptance by purchaser,'' and that any payments could be converted into cash, if made in other than lawful money, and could be retained by the seller in case of default.

On July 5, Hublit sent defendant a $5,000 check drawn by

Daskarolis on a Hollister bank. This check, which named defendant as payee, was not accompanied by any explanations or instructions. Although the check may have been given in pursuance of the agreement that the deposit was to be increased to 10 per cent of the purchase price, defendant was not informed that such was its purpose, and the check was for $880 in excess of the amount required to complete the necessary deposit of $9,120. Defendant's manager endorsed the check, "Pay to the order of 12 The Hollister National Bank 12 Hollister, Cal. Escrow Account San Benito Title Guarantee Co.," and placed it in defendant's files with other papers relative to the transaction.

A few days later Hublit told defendant that Daskarolis' wife was to be named as a grantee in the deed from Rianda, that the cash payment was to be $27,000 rather than $30,000, and that the amount of the note secured by trust deed was to be correspondingly increased to $64,200. Defendant made a title search and prepared a deed, note, deed of trust and proposed escrow instructions. No reference was made in these instructions to the $5,000 payment mentioned in the deposit receipt, nor to the $5,000 check made payable to defendant. The seller's instructions, which were signed by Rianda, authorized defendant to deliver the deed to the grantees upon the payment to the defendant of the sum of $27,000 plus the note and deed of trust for $64,200. The buyer's instructions were never delivered to or signed by Daskarolis, and he never gave defendant any instructions, oral or written, with respect to the transaction. Although he inspected the note and trust deed at defendant's office, he did not sign them.

In a letter to defendant dated August 23, Rianda's attorney, whose office was in San Jose, demanded that defendant forward $5,000 to Rianda "covering" the amount deposited with defendant, stating that Daskarolis had indicated his intention not to complete the purchase. On Monday, August 26, Daskarolis withdrew $5,000 from his commercial account with the drawee bank, leaving a balance insufficient to cover the check, and orally informed defendant that he had "stopped payment" on the check. It does not appear when the letter from Rianda's attorney was received but defendant answered it on August 26, informing the attorney of the action taken by Daskarolis. The time set for performance of the contract by Daskarolis passed, and plaintiffs brought this action seeking to recover the amount of the check on the theory that defendant was negligent in failing to cash or deposit the check

promptly. The title company defended on the ground that it had received no instructions from either party to cash or deposit the check and that it was not guilty of negligence in failing to do so.

The court found that defendant had not been negligent, and the question to be determined is whether there is evidence to support this finding.

 Defendant's duty to plaintiffs is to be determined by the application of ordinary principles of agency, whether defendant be considered as escrow holder with duties to both Rianda and Daskarolis or as agent of plaintiffs alone. It is the duty of an agent to obey the instructions of his principal and exercise in his employment reasonable skill and ordinary diligence, and, if defendant violated instructions or acted negligently in retaining the check in its files, it would ordinarily be liable for any loss occasioned by its breach of duty. (See *Jones* v. *Title Guaranty etc. Co.*, 178 Cal. 375, 380 [173 P. 586] ; Rest., Agency, §§ 385, 379 ; 1 Mechem on Agency (1914), §§ 1245, 1274-1287, 1309 ; 19 Am.Jur. § 465 ; 30 C.J.S. § 8, pp. 1205-1206.)

 Plaintiffs contend that the terms of the sales agreement relating to the seller's option to retain all amounts paid in the event of default, and authorizing the seller to convert into cash all payments made in other than lawful money, constituted instructions to cash the check or at least put defendant on notice of facts sufficient to place it under a duty to present the check promptly. We cannot agree, however, that mere knowledge of the terms of the unsigned copy of the agreement placed defendant under such a duty, and, moreover, it is difficult to see how the agreement can be construed as a direction to defendant to cash the check. It does not mention defendant or provide for an escrow, and it does not require anyone to cash checks received from the buyer. Nor is any reference made in the agreement to the check which was subsequently delivered to defendant without instructions. There is nothing in the agreement or elsewhere in the record to show that it was intended or understood as an instruction to defendant to do anything with the check. There was no evidence that defendant was ever informed that the sales agreement had been signed by the parties or that there was a binding contract, and, as we have seen, the instruction signed by Rianda did not follow the terms of the agreement, but contained different provisions as to the amount of the cash payment, the principal of the note and trust deed, and the

parties to be named as grantees. Furthermore, defendant was not informed that the check was a part of a deposit which was then due and which might be forfeited in the event of default by Daskarolis. In this connection, it is significant that, as before stated, the amount of the check did not conform to the amount of the deposit required by the terms of the agreement. It is likewise significant that, although Daskarolis made the check payable to defendant, he never gave defendant any instructions concerning it.

█ It is argued that the letter of August 23, notifying defendant of Daskarolis' contemplated default and demanding payment of $5,000, placed defendant under a duty to present the check for payment. Even if we assume that the letter might have placed defendant under such a duty, the record does not show that defendant had any opportunity to act before Daskarolis made the withdrawal from his bank account. There was no proof as to when the letter was mailed, where it was mailed, when it was received, or when it should have been delivered to defendant in Hollister in the ordinary course of the mails. All that the record shows is that the letter was dated at San Jose August 23, which was a Friday, and that it was answered by defendant by a letter dated August 26, which was a Monday. Neither was there any evidence as to what time of day on Monday, August 26, Daskarolis withdrew the money or notified defendant that he had "stopped payment" on the check. Under these circumstances the trial court was not compelled to find that the defendant received notice of plaintiffs' claim in time to act.

█ Plaintiffs finally contend that even in the absence of instructions to cash the check there was a duty imposed on defendant by statute to present the check promptly. They rely on Civil Code, section 3265b, part of the Uniform Negotiable Instruments Law, which provides: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay." It is obvious, however, that the code section does not aid plaintiffs here. Regardless of what duty, if any, it imposes upon a holder or payee as to the drawer, it does not purport to create a duty of diligence to other persons. It merely makes a defense available to the drawer to the extent that unreasonable delay in presentment causes loss to him. (See Brannan's Negotiable Instrument Law (1932) § 186, p. 1044 et seq.)

We cannot say as a matter of law that defendant was guilty

of any breach of duty in failing to cash or deposit the check. The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied May 18, 1950.