[Civ. No. 7053. Fourth Dist. May 2, 1963.]

MARY SPAZIANI, Plaintiff and Appellant, v. BEN O. MILLAR et al., Defendants and Respondents.

Rothman, Silver, Monosson & Hirsch, Samuel Silver and Daniel L. Rothman for Plaintiff and Appellant.

Shaw & Morgan, Fullerton & Morris, Harold Pilskaln, Jr., Norman E. Caldwell, William W. Shaw and Robert S. Morris for Defendants and Respondents.

COUGHLIN, J.—This action arises out of transactions incident to a sale of real property. The plaintiff, who is the appellant herein, was the seller. The defendants, who are the respondents herein, were the buyer, the escrow holder, and a loaning institution which made a loan to the buyer secured by a first deed of trust upon the subject property. The issues presented to the trial court were raised and defined by an

amended complaint alleging five causes of action; answers thereto; and a pretrial order. The first cause of action alleges ultimate and evidentiary facts which, in substance, narrate the plaintiff's version of the transaction in question; sets forth the issues in controversy, which are limited to an alleged fraud in which all parties defendant participated; and seeks declaratory relief with respect to controversies concerning the alleged existence of such fraud. Each of the remaining causes of action incorporates some of the allegations in the first cause of action and adds others thereto. The second cause of action seeks reformation of a deed of trust from the buyer to the seller, so that it would include all of the property sold instead of only one-half thereof, and alleges fraud and mistake as a basis therefor. The third and fourth causes of action, respectively, seek recovery of damages for fraud and constructive fraud. The fifth cause of action is based on a negligence theory. The pretrial order, in stating the issues, propounds a number of questions among which was the following: "Did the defendants or any of them violate or breach any duty or obligation owed to plaintiff?" In substance the stated question amplifies an issue disclosed by the facts alleged in the amended complaint.

The trial court granted motions for nonsuit made by the escrow holder, *viz.*, Land Title Company of San Bernardino, a corporation, by Ellen Lynn, its employee, and by the loaning institution, *viz.*, Arrowhead Savings and Loan Association; found in favor of the buyer, *viz.*, Gerald Millar and his brother, Ben O. Millar, in whose name title to the property had been taken as a matter of convenience; and caused orders and judgment to be entered accordingly. The plaintiff, Mary Spaziani, appeals.

Gerald Millar, one of the defendants, was a real estate broker; hereinafter is referred to as Gerald; had been asked by Mary Spaziani, the plaintiff, to sell two adjoining lots which she owned, and for which she was asking $22,000; took an oral listing thereon; was unable to effect a sale thereof; and, thereafter, indicated his interest in purchasing the same as a speculation. Each of these lots was 65 feet in width by 150 feet in depth; was improved with a rented dwelling; and was part of a larger parcel which included an additional 65 by 150-foot unimproved lot, to the rear thereof. Mrs. Spaziani told Gerald that if he would purchase both lots she would "throw in" the two unimproved lots to the rear without additional charge. Gerald testified that he told Mrs. Spa-

ziani he would purchase her property for $22,000 "on the basis of securing a first deed of trust for approximately $10,000 on the front portion of the land where the houses were located"; that "I would give her $2,000 down and she would carry the second trust deed back for the difference of her purchase price"; that he wanted to have the rear portion of the property released "free and clear with the anticipation that . . . [he] would develop the property and build on it"; that, as to the rear portion, "I would . . . put a construction loan on it and build on it"; and that "this was the only condition I would buy it under." Mrs. Spaziani agreed that Gerald said he would build on the rear portion; "build us some income in the back"; but does not remember if anything was said about putting a lien on the property for this purpose. After a "lot of discussion" over a period of time the parties agreed to proceed with the deal as outlined. Gerald told Mrs. Spaziani that he was having marital trouble with his wife, and for this reason wanted the property to be taken in the name of his brother, Ben O. Millar, hereinafter referred to as Ben. She had no objection to such an arrangement. A deposit receipt agreement prepared by Gerald and signed by Mrs. Spaziani, although she does not admit signing it, or seeing it before trial, provided as follows:

"Date: October 13, 1958

"Purchaser Ben O. Millar (not Gerald A. Millar)

"Broker West Coast Land Co., 9535 Sierra

"Broker's Commission None

"Property Sold 16844 Holly St. — Lot 65' x 300'
16834 Holly St. — Lot 65' x 300'

"Purchase Price $22,000

"Terms: $2,000 down Balance $20,000 payable
$120 per mo including 6% interest subordinated
to a $10,000 trust deed payable $120 mo incl.
6% with release of 120 x 150 with easement to
Holly St. Trust deed to be divided on each
property proportionately—Buyer pay escrow.
Interest at 6% per annum on unpaid portion of
the purchase price to be included in the pre-
scribed payments and possession given close of
escrow.

"Deposit $200"

The $200 deposit was not given to Mrs. Spaziani. Gerald

took the deposit receipt to the Land Title Company; spoke to the defendant Ellen Lynn, an escrow officer of that company, about opening an escrow; showed her the agreement; gave her directions concerning the matter; and asked her to prepare escrow instructions accordingly. Later Gerald and Mrs. Spaziani, together, came to the escrow office and were shown the escrow instructions that had been prepared which, among other things, provided that title to the whole property should vest in Ben Millar subject to two deeds of trust; that Mrs. Spaziani was to be paid $2,000 in cash, and was to receive a note for $20,000 secured by one of the deeds of trust, in which she and her two daughters would be named payees; and that a policy of title insurance should be procured insuring the title accordingly. The language used in relating the trust deed situation was as follows:

"First Deed of Trust to file: Construction loan to come.

"Second Deed of Trust to File: Executed by Buyer to secure Note in amount of $20,000.00 with interest thereon at the rate of 6% per annum payable monthly in favor of Mary Spaziani, a widow, Diana Spaziani, a single woman, and Linda Gloria Spaziani, a single woman, mother and daughters all as joint tenants, principal and interest payable in installments of $120.00 or more on the _____ day of each month, beginning 30 days from close of escrow. Interest credited to close of escrow.

*Deeds of Trust are to cover the following described property*: The South 150 feet of the North ½ of the West ½ of the East ½ of Lot 705. . . .

Balance of property is to remain clear."

The instructions further provided: (1) That any policy of insurance called for therein "may be issued for the benefit of all parties in interest"; and (2) that "No notice, demand or change of instructions shall be of any effect in this escrow unless given in writing by all parties affected thereby."

Mrs. Spaziani insisted that the escrow instructions be changed to the end that the property conveyed should include an area 120 feet by 300 feet, instead of 130 feet by 300 feet, thus reducing the width of the two parcels by 10 feet. This demand appears to be related to the provisions in the deposit receipt agreement referring to a "release of 120x150 with easement to Holly St." Eventually the escrow instructions were modified by reducing the width of the property sold to 120 feet. Mrs. Spaziani also expressed concern about tak-

ing a second deed of trust; discussed this matter with a banker, the escrow officer of another title company, and one of her daughters; but signed the escrow instructions without any change in this regard. The evidence leaves no doubt that Mrs. Spaziani knew she was taking a second deed of trust on the prroperty to secure the unpaid $20,000 balance of the purchase price. On the other hand, she claims that she did not agree, and did not know, that her deed of trust covered only the southerly half of the property which she had sold, *viz.*, the two 65x150 foot lots upon which the rental dwellings were situated, less the 10 feet reserved from their width in accord with her demand. However, it clearly appears from the escrow instructions that the land to be included in both deeds of trust was limited to the "South 150 feet" of the property sold; and the description thereof was followed by the unambiguous statement: "Balance of property is to remain clear."

Ben Millar, the nominal purchaser, filed a loan application with the defendant Arrowhead Savings and Loan Association; stated therein that he sought a purchase assistance loan; and obtained a commitment from that association to loan him a total of $11,000, to be evidenced by two promissory notes in the sum of $5,500 each, bearing interest at 6.6 per cent per annum, payable at the rate of $96.00 per month, and secured respectively by deeds of trust on each of the two lots being purchased. The loan company instructed the escrow holder that the $11,000 loan might be used when a policy of title insurance had been issued showing title to the subject property to be vested in Ben O. Millar, subject to its deeds of trust as a first lien thereon.

Prior to close of escrow a loan company representative read the escrow instructions executed by Ben and Mrs. Spaziani; observed that they referred to a construction loan whereas the loan applied for from them was for "purchase assistance"; inquired of the escrow holder about this matter; and was told that the construction loan instruction referred to another obligation which was to be placed on the rear of the property.

Without obtaining any amended instructions or receiving any further direction from Mrs. Spaziani with respect to the amount, type, or terms of the first deed of trust, the escrow holder proceeded to close the escrow; effected recording of the deed from her to Ben, the nominal purchaser of the total property, i.e., the two 65 by 300-foot parcels, less the reserved 10-foot strip; also effected recording of the $5,500

first deeds of trust in favor of the loan company on each of the improved lots, and of the $20,000 second deed of trust in favor of Mrs. Spaziani on the same lots; delivered to Mrs. Spaziani the balance of the $2,000 cash payment due her after paying delinquent taxes and escrow charges; on order of the nominal purchaser, Ben, paid $2,700 of the loan money to Gerald, the real purchaser, and Thomas B. Washburn, his partner in a real estate brokerage business; and released the balance of the $11,000 loan to Ben, the nominal purchaser.

Two months after the close of escrow the defendant Gerald advised the loan company that he had taken over the property from his brother Ben. In the meantime Gerald endeavored to get a right-of-way from Mrs. Spaziani over the 10-foot strip which she reserved from the property sold; told her that he was unable to do any construction upon the rear lots unless he had a means of ingress and egress to and from those lots; claimed that he intended to use this 10-foot strip for this purpose when it originally was included as a part of the sale; was unsuccessful in his endeavor to obtain a means of ingress and egress, as he and Mrs. Spaziani could not get together on a price; had made preparatory inquiries concerning his proposed improvements, but took no further action with respect thereto when his request for a right-of-way was refused; and used the money he had received from his brother on the first trust deed loan in payment of various unidentified obligations.

After making three payments, Gerald defaulted on the trust deed obligations, and the loan company instituted foreclosure proceedings which were stayed prior to sale by a preliminary injunction obtained in the present action.

Although the amended complaint contained allegations of a conspiracy in which all of the defendants participated, at the time of pretrial it was stipulated that no relief was sought against the defendants Land Title Company, Ellen Lynn, and Arrowhead Savings and Loan Association on any theory of conspiracy.

As a matter of convenience, the appeal from the judgment in favor of the buyer Gerald Millar and his brother Ben Millar, from the order of nonsuit in favor of the escrow company and its officer, and from the order of nonsuit in favor of the loaning institution, will be considered separately. However, the facts heretofore stated relate to each appeal.

## DEFENDANTS MILLAR

The issues on this appeal are whether the evidence supports

the finding of the trial court; whether the facts as found support its conclusion of nonliability under the pleadings and the pretrial order; and whether the evidence establishes any facts, as a matter of law, which require a contrary conclusion.

In general, the trial court found untrue the allegations in the amended complaint (1) respecting misrepresentations by Gerald, *viz.*, that he would invest his own money in and intended to build additional residential units on the subject property, that he would expend large sums of money to improve the front half of the property, that the back half would remain free and clear for the plaintiff, and that he would secure a loan upon the property for the purpose of constructing improvements thereon, which was an allegation inconsistent with the previously noted alleged misrepresentations; (2) concerning the plaintiff's claims as to the terms of the transaction in question, *viz.*, that her deed of trust was to cover the whole of the property sold and not only the front half thereof, i.e., the improved lots, and that this deed of trust would be subject to a subordination loan for construction purposes on the front half of the property rather than being subject to a first deed of trust as set forth in the escrow instructions; and (3) as to the plaintiff's mistaken belief that the escrow instructions signed by her did not limit her deed of trust to the front half of the property sold. These allegations were basic to the plaintiff's causes of action as set forth in her amended complaint. There was ample evidence of a substantial character supporting the finding of the trial court that they were not true. Under such circumstances, the plaintiff has not proven the case she presented to the trial court. She now urges a right to recover upon a different case and, in substance, asks this court to reverse the judgment upon the ground that the trial court did not make findings with respect to issues of fact which are basic to a determination of her rights under the new case as now presented. Contrary to an implied suggestion contained in the plaintiff's briefs, the pretrial order did not add to the issues presented by her amended complaint as against the defendants Millar.

The court found "that during the negotiations between plaintiff and . . . [the defendant Gerald], plaintiff was not represented by any attorney nor had she employed a real estate broker to list and sell her property." She attacks this finding, claiming that the evidence establishes as a matter of law that Gerald was her broker. However, she had alleged

in her amended complaint that: "At no time during the negotiations with Millar was plaintiff represented by an attorney, nor had she employed a real estate broker." The questioned finding accepts the allegations of the amended complaint as true. Obviously the plaintiff may make no valid objection thereto. ■ Furthermore, whether Gerald was a real estate broker for Mrs. Spaziani during the course of the negotiations under review was a question subject to conflicting testimony and inferences, and a finding that he was not her broker at that time would be binding on this court. (*Grainger* v. *Antoyan*, 48 Cal.2d 805, 807 [313 P.2d 848].) ■ On appeal the plaintiff contends that a confidential or fiduciary relationship existed between her and Gerald and, in the light of this relationship, findings on the issue of fraud are not supported by the evidence. The trial court decided this case on the issues raised and defined by the pleadings and the pretrial order. Nowhere therein is there any allegation that Gerald stood in a confidential or fiduciary relationship toward Mrs. Spaziani; and the record before us does not disclose that any issue was raised with respect thereto. ■ Findings are required only on an issue of fact raised by the pleadings or the pretrial order. (*Bandy* v. *Westover*, 200 Cal. 222, 230 [252 P. 593]; *Waldecker* v. *Waldecker*, 178 Cal. 566, 568 [174 P. 36].) ■ The contention now made that, because of an alleged confidential or fiduciary relationship between Gerald and Mrs. Spaziani, the evidence does not support the conclusion of nonliability on the part of the defendants Millar, rests on a matter raised for the first time on appeal; involves an issue of fact not presented as such to the trial court; and may not be considered by this court. (*Barrera* v. *De La Torre*, 48 Cal.2d 166, 172 [308 P.2d 724].) ■ Furthermore, contrary to the plaintiff's contention, the evidence in the instant case does not require a finding as a matter of law that a confidential or fiduciary relationship existed between these parties; there is substantial evidence which would support a contrary finding; and a fact is not established as a matter of law unless the record supports no other reasonable conclusion. (*Hudson* v. *Rainville*, 46 Cal.2d 474, 477 [297 P.2d 434]; *Martinez* v. *Southern Pacific Co.*, 45 Cal.2d 244, 248 [288 P.2d 868]; *Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, 186 Cal.App.2d 451, 460 [9 Cal.Rptr. 479]; *Bowman* v. *Collins*, 181 Cal.App. 2d 807, 810 [5 Cal.Rptr. 776].) ■ The finding on the ultimate fact in the fraud issues herein, impliedly consti-

tutes a finding of the nonexistence of a confidential or fiduciary relationship between the parties if such a finding is essential to support the judgment. (*Albonico* v. *Madera Irr. Dist.*, 53 Cal.2d 735, 741 [3 Cal.Rptr. 343, 350 P.2d 95]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].)

The plaintiff also claims that the trial court erred in finding as untrue the allegation that Gerald falsely represented that he intended to place a construction loan on the property and improve the same because, by his testimony, he admitted that he told her he would put a construction loan on the property and build on it, and the fact that he caused $2,700 of the proceeds from the $11,000 loan to be paid to his real estate firm is proof that he made the representation in question without intent to perform. The testimony relied upon bears the interpretation that Gerald told Mrs. Spaziani he intended to put a construction loan on the *rear portion* of the property and build on it. There was other evidence supporting the conclusion that such a construction loan was not made and no improvements were placed thereon because of a dispute between the parties respecting a 10-foot access easement. Also, there is evidence which supports the conclusion that Gerald was to borrow money on the front part of the property rather than the rear portion thereof. There is no evidence that any particular amount of the money borrowed, either on the rear or front portions of the property as security, was to be used for improvement purposes. Under these circumstances, the fact that Gerald may have caused $2,700 from the loan secured by the first deed of trust on the front portion of the property to be paid to his real estate firm, does not require a finding that the representation that he would borrow money on the property and improve the rear portion thereof was made without intent to perform. The plaintiff's contention to the contrary is without merit.

The plaintiff, through her attorney, set forth her claim against the defendants Millar in her amended complaint. The trial court made its decision upon the claim as presented. Sympathy for her plight attributable to the improvident nature of the transaction to which she was a party does not authorize this court to reverse that decision on the ground that the evidence would support a favorable decision in the plaintiff's favor upon a different claim. (*King* v. *San Jose Pacific B. & L. Assn.*, 41 Cal.App.2d 705, 708 [107 P.2d 442].)

The plaintiff did not sue the defendants Millar for breach of contract. As noted, the findings of the trial court on the issues of fact presented by the amended complaint foreclose recovery thereunder. The judgment must be affirmed.

## RE LOANING INSTITUTION

The causes of action against the defendant Arrowhead Savings and Loan Association are predicated upon the theory that it owed the plaintiff an obligation to advise her that the loan which it made was not for construction purposes. This contention is without merit. There is no evidence in this case establishing the existence of any common law, statutory, or contractual obligation on the part of the loaning institution in favor of the plaintiff for a breach of which she might be entitled to damages.

The plaintiff asserts that the loan company was not a bona fide encumbrancer for value without notice. This is an example of one of the many instances wherein she engages in a free flow of adjectives to describe the conduct or position of the parties to the subject transaction. The assertion in question is unrelated to any of the issues in the case. The loan company agreed with the defendant Ben Millar to loan him $11,000 providing it was given a $5,500 first deed of trust upon each of the improved lots purchased as security for repayment; caused the borrower to execute such deeds of trust; and authorized the escrow holder to disburse the money loaned when a policy of title insurance could be issued showing title to the property in question to be vested in the buyer subject to these deeds of trust as a first lien thereon. The escrow holder followed these instructions. The deeds of trust became first liens upon the property. The plaintiff's charge against the loan company raised no issue requiring it to rely on the rules of law which protect a bona fide encumbrancer.

The plaintiff directs attention to the language used in the deposit receipt which recited that the deed of trust she was to receive would be subordinated to a deed of trust in the sum of $10,000, and claims that this amounted to a subordination agreement; that the terms of this agreement provide for subordination to a loan for construction purposes only; and cites cases declaring that the subsequent lender of money upon property subject to a deed of trust declaring it to be subordinate to other loans for construction purposes could claim a priority only if the money loaned was advanced

for those purposes. The decisions in these cases are inapplicable to the case at bar. The deed of trust held by the defendant loan company was a first deed of trust; the deed of trust held by the plaintiff was a second deed of trust; by virtue of these facts the latter was subordinated to the first; and the purpose for which the first loan had been made bore no relationship to its priority.

The order granting the motion for nonsuit by defendant Arrowhead Savings and Loan Association was proper.

### Re Escrow Holder

The defendant Land Title Company of San Bernardino, and its employee Ellen Lynn, will be referred to herein as the escrow holder. The issues presented for determination with respect to them were, among others, whether they had negligently discharged their obligations to the plaintiff and whether, as stated in the pretrial order, they violated or breached any duty to the plaintiff. The court granted their motion for a nonsuit; the plaintiff appealed from this order; and the question on appeal is whether there is any substantial evidence in the record which would support a finding in plaintiff's favor with respect to the aforesaid issues.

As heretofore noted, the escrow instructions as prepared by the escrow holder provided that title to the subject property was to be transferred to Ben Millar subject to a "First Deed of Trust to file: Construction loan to come," and to a second deed of trust securing payment of the $20,000 purchase price balance. This instruction, as written, is indefinite and uncertain. (See e.g., *Kessler* v. *Sapp*, 169 Cal.App.2d 818, 823 [338 P.2d 34]; *Roven* v. *Miller*, 168 Cal.App.2d 391, 398 [335 P.2d 1035].) The first deed of trust is without identification either as to parties, amount, or terms of payment. Without obtaining any additional instructions, or any amendment to those theretofore given, the escrow holder proceeded to close the escrow; caused title to the plaintiff's property to be transferred to Ben Millar; and caused the plaintiff's second trust deed to be subject to a first deed of trust in favor of the loan company for $11,000. Thus, there is squarely presented for consideration the question whether the escrow holder, in proceeding to close the escrow without further instructions, breached its duty toward the plaintiff or failed to exercise ordinary care and skill in the premises.

In addition, there is evidence from which the court could have concluded that the escrow holder had notice that the

loan to be secured by the first deed of trust was to be a construction loan; expressed its belief to Ben Millar that this loan was to be for construction purposes; had written the loan company about its loan and referred thereto as a construction loan; was asked by a representative of that company whether the instructions provided for a construction loan and told him that the construction loan was to be on the rear portion of the property sold rather than upon the portion covered by the first deed of trust; learned that the loan covered by the first deed of trust was not to be used for construction purposes; and failed to communicate this information to the plaintiff. Thus, the evidence presents the further question whether the escrow holder, in failing to advise the plaintiff respecting its knowledge concerning the nature of the loan being made to the buyer and secured by the first deed of trust, exercised ordinary care and diligence in the discharge of its obligations to her.

 An escrow holder is the agent of all the parties to the escrow at all times prior to performance of the conditions of the escrow (*Shreeves* v. *Pearson,* 194 Cal. 699, 707 [230 P. 448]; *Todd* v. *Vestermark,* 145 Cal.App.2d 374, 377 [302 P.2d 347]); bears a fiduciary relationship to each of them (*Amen* v. *Merced County Title Co.,* 58 Cal.2d 528, 534 [25 Cal.Rptr. 83, 375 P.2d 51]); and owes an obligation to each measured by an application of the ordinary principles of agency. (*Rianda* v. *San Benito Title Guar. Co.,* 35 Cal.2d 170, 173 [217 P.2d 25].)

 It is the duty of an escrow holder to comply strictly with the instructions of his principal (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, 531; *Rianda* v. *San Benito Title Guar. Co., supra,* 35 Cal.2d 170, 173; *Karras* v. *Title Ins. & Guar. Co.,* 118 Cal.App.2d 659, 665 [258 P.2d 866]), and if he disposes of the property of his principal in violation of these instructions, or otherwise breaches that duty, he will be responsible for any loss occasioned thereby. (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, 532; *Rianda* v. *San Benito Title Guar. Co., supra,* 35 Cal.2d 170, 173; *Jones* v. *Title Guaranty etc. Co.,* 178 Cal. 375, 380 [173 P. 586].) Likewise, it is the duty of an escrow holder to exercise ordinary skill and diligence in his employment (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, 532; *Rianda* v. *San Benito Title Guar. Co., supra,* 35 Cal.2d 170, 173), and if he acts negligently he is responsible for any loss occasioned thereby, subject to the rules ordinarily applicable

in the premises. (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, 532; *Rianda* v. *San Benito Title Guar. Co., supra,* 35 Cal.2d 170, 173; *Karras* v. *Title Ins. & Guar. Co., supra,* 118 Cal.App.2d 659, 665.)

 In the case at bar, there was evidence from which the trial court could have found that the escrow holder proceeded to effect a transfer of the plaintiff's title to Ben Millar without determining her intention with respect to the terms of the first deed of trust to be placed against that property which was to take precedence over the deed of trust securing payment to her of the balance of the purchase price, and from the facts it also could have found that the escrow holder was negligent in the discharge of its duty to exercise due skill and diligence in the performance of its agreement with the plaintiff. (*Citizens Nat. Bank* v. *Davisson,* 229 U.S. 212 [33 S.Ct. 625, 628-629, 57 L.Ed. 1153].) In substance, the action of the escrow holder in causing recordation of the deed from plaintiff to Ben Millar without instructions from her respecting the terms of the deed of trust which was to precede that given as security for payment of the purchase price balance, amounted to an exercise of authority without first determining the conditions under which that authority might be exercised or, stated otherwise, constituted a disposition of the plaintiff's property without instructions in the premises because the instructions given were meaningless.

There also was evidence which would have supported a finding that the escrow holder knew that it was plaintiff's intention that the loan to be secured by the first deed of trust was to be a construction loan; also knew that she and Millar had agreed upon the amount of that loan and the terms of repayment as indicated in the deposit receipt; or knew that the amount of that loan and the terms of repayment were matters for future determination; in the course of its employment learned that the loan in question was not to be a construction loan; also learned that the amount thereof and the terms of repayment were different than had been agreed upon in the deposit receipt; that this information was available to all of the parties to the escrow; and that the escrow holder proceeded to close the escrow without communicating the same to the plaintiff. Whether this conduct, under all of the circumstances, amounted to a failure of the escrow holder to discharge its duty toward plaintiff to exercise due skill and diligence in its employment and, therefore, constituted negli-

gence, was a question of fact for determination by the trial court.

The law imposes upon an agent the duty to exercise ordinary care to communicate to his principal knowledge acquired in the course of his agency with respect to matters pertaining thereto. (Generally see Civ. Code, § 2020; *Freeman* v. *Superior Court*, 44 Cal.2d 533, 537, 538 [282 P.2d 857].) The obligation of an escrow holder to disclose to his principal information acquired by him in the course of his employment must be viewed in the light of the fiduciary relationship existing between them. (*Amen* v. *Merced County Title Co., supra*, 58 Cal.2d 528, 534.)

The negligence issue under the evidence at hand was one of fact, and should not have been determined as a matter of law upon a motion for nonsuit.

The respondent escrow holder contends that, as it was prohibited from practicing law, it had no duty to advise Mrs. Spaziani with respect to her rights and obligations in the premises and, therefore, was not negligent. However, a discharge of its duty to exercise ordinary skill and diligence in the areas heretofore noted would not have involved the practice of law and, consequently, the contention advanced is not applicable thereto.

Ordinarily the issues of proximate cause and damages in negligence actions present questions of fact (*Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 37 [286 P.2d 21]; *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 319 [282 P.2d 12]); the state of the evidence in the instant case does not justify a determination thereof as a matter of law; and the respondent escrow holder's contention to the contrary is without merit.

Likewise, the defense of contributory negligence, which the escrow holder urged at the time of trial, under the evidence at hand presents an issue of fact rather than of law and may not be determined on a motion for nonsuit. The findings on this issue in the case against the defendants Millar are inapplicable to the case against the defendant escrow holder.

The order granting the instant action for nonsuit was error.

The judgment in favor of the defendants Millar, and the order granting the motion for nonsuit in favor of the defendant Arrowhead Savings and Loan Association are affirmed. The order granting the motion for nonsuit in favor of the

defendants Land Title Company of San Bernardino and Ellen Lynn is reversed. The respondents Millar and Arrowhead Savings and Loan Association will recover their costs on appeal from appellant Spaziani. Appellant Spaziani will recover her costs on appeal from the respondents Land Title Company of San Bernardino and Ellen Lynn.

Griffin, P. J., and Brown (Gerald), J., concurred.