Opinion
 

 ALLPORT, Acting P. J.
 

 Facts
 

 [1]
 

 On November 15, 1974, Edelso Diaz executed a written agreement for the sale of his assets in the La Lechonera Restaurant to Antonio and
 
 *164
 
 Bertha Gil. Diaz was a recent immigrant and could not read nor write English and was ignorant of legal formalities. The agreement was prepared by a notary public and provided in part:
 

 “-Now Therefore, in consideration of the mutual covenants herein contained and other and good and sufficient considerations, the parties hereto agree as follows:_
 

 A) - Assets Being Purchased and Price:
 

 -It Is agree [sic] between the parties hereto that the total purchase
 

 price for the assets being purchased is the sum of Nineteen Thousand Dollars, 00/100 (19,000.00), with the following terms of payments:_
 

 B) - Seven Thousand Dollars, 00/100 ($7,000.00) to be paid forthith.- [.mc]
 

 C) - Assumption of the Balance as Follows:- Forty (40) payments of Three Hundred Dollars, 00/100 ($300.00) each or more, being the first payment due on the 15th. day of December, 1974, and each 15th. of each month thereafter until paid in full__”
 

 In furtherance of the sale an escrow was opened by Antonio Gil at the United California Bank on December 10, 1974. The escrow was handled on behalf of the bank by defendant Dorene A. Gordon and was processed on printed forms of the bank signed by Edelso and Luz H. Diaz as well as by Antonio Gil. Bertha Gil did not sign the escrow instructions or sign the note subsequently prepared by the bank in closing the escrow. In pertinent part the original escrow instructions provided for a “[n]ote for $7000 executed by Antonio Gil, in favor of Edelso Diaz and Luz M. Diaz, husband and wife, Principal payable $200.00 or more per month and continuing until paid.” On December 12, 1974, the escrow was supplemented by an additional instruction, also on a bank form, as follows: “You are hereby instructed to reduce the principal amount of the Note for $7,000.00 being delivered through escrow by an amount of $1,900.00, representing costs of repairs paid by
 
 *165
 
 Antonio Gil, by endorsement on back of Note. Principal payable in installments of $200.00 or more each on the first day of each month, beginning on the first day of February, 1975 and continuing until paid.” Prior to close of escrow a letter dated February 13, 1975, was sent to the bank by attorney Jorge Fernandez Isla purporting to represent the sellers which read as follows:
 

 “United California Bank 6510 Atlantic Avenue Bell, California 90201 Attn: Mrs. Gordon Re: Escrow Instructions Escrow No. 145-9357 Dear Mrs. Gordon: Confirming our telephone conversation Notice is hereby given as to the following: Our clients: Edelso and Luz M. Diaz .have informed this office that the amount indicated in above referred escrow of seven thousand dollars ($7,000.00) is in error. The escrow instructions should had [j/c] read ‘Note for $19,000.00’ and not $7,000.00. Enclosed please find a copy of the original agreement for the sale of ‘La Lechonera’ Restaurant 7730 Pacific Blvd. Huntington Park, California showing the actual selling price of $19,000.00. Since the closing of the escrow is contingent upon the issuance or transfer of an alcoholic beverage sale license, we have informed the Alcoholic Beverage Control Dep. of the error and confirming it by sending them copy of this letter together with copy of referred agreement to sale. Very truly yours, s/ Jorge Fernandez Isla”
 

 Thereafter, disregarding the attorney’s letter, the bank prepared the note for $7,000 and closed the escrow.
 

 In the fifth, sixth and tenth causes of action for breach of contract, negligence and breach of an implied covenant, plaintiffs Edelso and Luz
 
 *166
 
 M. Diaz seek compensatory and punitive damages from defendant bank and its agent Gordon. Antonio and Bertha Gil, and Santiago G. De Juan the notary, are named as defendants in eight other causes of action for fraud, breach of contract, reformation, negligence, and common count.
 

 A demurrer was sustained without leave to amend as to the causes directed against the bank and its agent and, as to them the action was dismissed. Plaintiffs appeal from the judgment (order of dismissal) in favor of these defendants. The appeal lies. (Code Civ. Proc., §§ 581d, 904.1.) In
 
 Gruenberg
 
 v.
 
 Aetna Ins. Co., supra,
 
 9 Cal.3d 566, 569, the Supreme Court entertained an appeal from such an order defining same as a “judgment of dismissal.”
 

 Discussion
 

 The gravamen of all three causes of action against the defendant bank lies in the claim that the escrow was improperly closed after the bank received the attorney’s letter notifying it of a claim of error with respect to the consideration for the sale as recited in the escrow instructions.
 

 It is elemental that the duty of an escrow holder is to comply strictly with the instructions of its principal and to exercise reasonable skill and ordinary diligence with respect to the employment. If the escrow holder fails to follow his instructions or acts negligently; he may be liable for any loss occasioned thereby.
 
 (Wade
 
 v.
 
 Lake County Title Co.,
 
 6 Cal.App.3d 824, 828 [86 Cal.Rptr. 182].)
 

 It is also elemental that, where the written escrow instructions amount to an agreement made by two principals with their joint agent and signed by both, neither can unilaterally change the instructions.
 
 (Wade
 
 v.
 
 Lake County Title Co., supra, 6
 
 Cal..App.3d 824, 828;
 
 Womble
 
 v.
 
 Wilbur,
 
 3 Cal.App. 535, 547 [86 P. 916].) We therefore agree with defendant bank that the escrow holder had no duty contractual or otherwise in the instant case to defer to plaintiffs’ unilateral notice as to the sale price and modify the escrow instructions in accordance therewith.
 

 The question however, remains as to the effect, if any, to be accorded the attorney’s letter. While ineffective as a unilateral attempt to modify the instructions, it clearly placed the escrow holder on notice of a possible error in the instructions with respect to a material matter involving the escrow itself. The agreement of sale provided for a sale
 
 *167
 
 price of $19,000 and failed to expressly call for a note of any kind. The escrow instructions as amended called for a note of $7,000 reduced by endorsement to $5,100 payable in installments of $200 or more per month. The Isla letter not only advises of the total sale price as reflected in the agreement of sale but specifically points out that the note should be for that amount ($19,000) rather than for $7,000. Under these circumstances it would appear that, even though it might not be a breach of the escrow agreement for the bank to proceed to close the escrow in accordance with the amended instructions, the failure of defendant bank to heed the notice of a possible error in the escrow instructions and to blindly dose in the face thereof might be found to be a failure to exercise reasonable skill and ordinary diligence in the conduct of the escrow, and thus support recovery on a tort theory.
 

 In
 
 Spaziani
 
 v.
 
 Millar,
 
 215 Cal.App.2d 667 [30 Cal.Rptr. 658], an action was brought against the buyer of real property for fraud and the escrow holder on theories of breach of contractual duty and negligence. The trial court granted a nonsuit as to the escrow holder. The pertinent facts were set out in the opinion as follows at pages 681-682:
 

 “As heretofore noted, the escrow instructions as prepared by the escrow holder provided that title to the subject property was to be transferred to Ben Millar subject to a ‘First Deed of Trust to file: Construction loan to come,’ and to a second deed of trust securing payment of the $20,000 purchase price balance. This instruction, as written, is indefinite and uncertain. (See e.g.,
 
 Kessler
 
 v.
 
 Sapp,
 
 169 Cal.App.2d 818, 823 [338 P.2d 34];
 
 Roven
 
 v.
 
 Miller,
 
 168 Cal.App.2d 391, 398 [335 P.2d 1035].) The first deed of trust is without identification either as to parties, amount, or terms of payment. Without obtaining any additional instructions, or any amendment to those theretofore given, the escrow holder proceeded to close the escrow; caused title to the plaintiff’s property to be transferred to Ben Millar; and caused the plaintiff’s second trust deed to be subject to a first deed of trust in favor of the loan company for $11,000. Thus, there is squarely presented for consideration the question whether the escrow holder, in proceeding to close the escrow without further instructions, breached its duty toward the plaintiff or failed to exercise ordinary care and skill in the premises.
 

 “In
 
 addition, there is evidence from which the court could have concluded that the escrow holder had notice that the loan to be secured by the first deed of trust was to be a construction
 
 loan; expressed its belief to Ben Millar that this loan was to be for construction purposes; had written the loan company about its loan and referred thereto as a construction
 
 *168
 
 loan; was asked by a representative of that company whether the instructions provided for a construction loan and told him that the construction loan was to be on the rear portion of the property sold rather than upon the portion covered by the first deed of trust; learned that the loan covered by the first deed of trust was not to be used for construction purposes; and failed to communicate this information to the plaintiff.
 
 Thus, the evidence presents the further question whether the escrow holder, in failing to advise the plaintiff respecting its knowledge concerning the nature of the loan being made to the buyer and secured by the first deed of trust, exercised ordinary care and diligence in the discharge of its obligations to her.”
 
 (Italics added.)
 

 These facts and the questions posed by the court are strikingly similar to those presented in the case at bench. In reversing the order granting the nonsuit the court said at pages 682-684:
 

 “An escrow holder is the agent of all the parties to the escrow at all times prior to performance of the conditions of the escrow
 
 (Shreeves
 
 v.
 
 Pearson,
 
 194 Cal. 699, 707 [230 P. 448];
 
 Todd
 
 v.
 
 Vestermark,
 
 145 Cal.App.2d 374, 377 [302 P.2d 347]); bears a fiduciary relationship to each of them
 
 (Amen
 
 v.
 
 Merced County Title Co.,
 
 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33]); and owes an obligation to each measured by an application of the ordinary principles of agency.
 
 (Rianda
 
 v.
 
 San Benito Title Guar. Co.,
 
 35 Cal.2d 170, 173 [217 P.2d 25].)
 

 “It is the duty of an excrow holder to comply strictly with the instructions of his principal
 
 (Amen
 
 v.
 
 Merced County Title Co., supra,
 
 58 Cal.2d 528, 531;
 
 Rianda
 
 v.
 
 San Benito Title Guar. Co., supra,
 
 35 Cal.2d 170, 173;
 
 Karras
 
 v.
 
 Title Ins. & Guar. Co.,
 
 118 Cal.App.2d 659, 665 [258 P.2d 866]), and if he disposes of the property of his principal in violation of these instructions, or otherwise breaches that duty, he will be responsible for any loss occasioned thereby.
 
 (Amen
 
 v.
 
 Merced County Title Co., supra,
 
 58 Cal.2d 528, 532;
 
 Rianda
 
 v.
 
 San Benito Title Guar. Co., supra,
 
 35 Cal.2d 170, 173;
 
 Jones
 
 v.
 
 Title Guaranty etc. Co.,
 
 178 Cal. 375, 380 [173 P. 586].) Likewise, it is the duty of an escrow holder to exercise ordinary skill and diligence in his employment
 
 (Amen
 
 v.
 
 Merced County Title Co., supra,
 
 58 Cal.2d 528, 532;
 
 Rianda
 
 v.
 
 San Benito Title Guar. Co., supra,
 
 35 Cal.2d 170, 173), and if he acts negligently he is responsible for any loss occasioned thereby, subject to the rules ordinarily applicable in the premises.
 
 (Amen
 
 v.
 
 Merced County Title Co., supra,
 
 58 Cal.2d 528, 532;
 
 Rianda
 
 v.
 
 San Benito Title Guar. Co., supra,
 
 35 Cal.2d 170, 173;
 
 Karras
 
 v.
 
 Title Ins. & Guar. Co., supra,
 
 118 Cal.App.2d 659, 665.)
 

 
 *169
 
 “In the case at bar, there was evidence from which the trial court could have found that the escrow holder proceeded to effect a transfer of the plaintiff’s title to Ben Millar without determining her intention with respect to the terms of the first deed of trust to be placed against that property which was to take precedence over the deed of trust securing payment to her of the balance of the purchase price, and from the facts it also could have found that the escrow holder was negligent in the discharge of its duty to exercise due skill and diligence in the performance of its agreement with the plaintiff.
 
 (Citizens Nat. Bank
 
 v. Davisson, 229 U.S. 212 [33 S.Ct. 625, 628-629, 57 L.Ed. 1153].) In substance, the action of the escrow holder in causing recordation of the deed from plaintiff to Ben Millar without instructions from her respecting the terms of the deed of trust which was to precede that given as security for payment of the purchase price balance, amounted to an exercise of authority without first determining the conditions under which that authority might be exercised or, stated otherwise, constituted a disposition of the plaintiff’s property without instructions in the premises because the instructions given were meaningless.
 

 “There also was evidence which would have supported a finding that the escrow holder knew that it was plaintiff’s intention that the loan to be secured by the first deed of trust was to be a construction loan; also knew that she and Millar had agreed upon the amount of that loan and the terms of repayment as indicated in the deposit receipt; or knew that the amount of that loan and the terms of repayment were matters for future determirtation; in the course of its employment learned that the loan in question was not to be a construction loan; also learned that the amount thereof and the terms of repayment were different than had been agreed upon in the deposit receipt; that this information was available to all of the parties to the escrow; and that the escrow holder proceeded to close the escrow without communicating the same to the plaintiff.
 
 Whether this conduct, under all of the circumstances, amounted to a failure of the escrow holder to discharge its duty toward plaintiff to exercise due skill and diligence in its employment and, therefore, constituted negligence, was a question of fact for determination by the trial court.
 
 [Italics added.]
 

 “The law imposes upon an agent the duty to exercise ordinary care to communicate to his principal knowledge acquired in the course of his agency with respect to matters pertaining thereto. (Generally see Civ. Code, § 2020;
 
 Freeman
 
 v.
 
 Superior Court,
 
 44 Cal.2d 533, 537, 538 [282 P.2d 857].) The obligation of an escrow holder to disclose to his principal information acquired by him in the course of his employment must be
 
 *170
 
 viewed in the light of the fiduciary relationship existing between them.
 
 (Amen
 
 v.
 
 Merced County Title Co., supra,
 
 58 Cal.2d 528, 534.)
 

 “The negligence issue under the evidence at hand was one of fact, and should not have been determined as a matter of law upon a motion for nonsuit.
 

 “The respondent escrow holder contends that, as it was prohibited from practicing law, it had no duty to advise Mrs. Spaziani with respect to her rights and obligations in the premises and, therefore, was not negligent. However, a discharge of its duty to exercise ordinary skill and diligence in the areas heretofore noted would not have involved the practice of law and, consequently, the contention advanced is not applicable thereto.
 

 “Ordinarily the issues of proximate cause and damages in negligence actions present questions of fact
 
 (Hilyar
 
 v.
 
 Union Ice Co.,
 
 45 Cal.2d 30, 37 [286 P.2d 21];
 
 Warner
 
 v.
 
 Santa Catalina Island Co.,
 
 44 Cal.2d 310, 319 [282 P.2d 12]); the state of the evidence in the instant case does not justify a determination thereof as a matter of law; and the respondent escrow holder’s contention to the contrary is without merit.”
 

 We consider the holding in
 
 Spaziani
 
 persuasive of our decision herein requiring reversal of the order of dismissal. We note that without reference to
 
 Spaziani
 
 defendant bank cites, inter alia,
 
 Lee
 
 v.
 
 Title Ins. & Trust Co.,
 
 264 Cal.App.2d 160 [70 Cal.Rptr. 378] and
 
 Gordon
 
 v.
 
 D & G Escrow Corp.,
 
 48 Cal.App.3d 616 [122 Cal.Rptr. 150], in support of its position. The bank’s reliance upon these cases is misplaced. First, neither is authority for a contrary holding herein. Second, both are factually distinguishable. Third,
 
 Gordon
 
 does not overrule
 
 Spaziani
 
 but simply distinguishes it by reference to
 
 Lee
 
 and saying at page 622, “There [Lee] an escrow holder was held to be under no duty to disclose to a buyer of real property that other parties to the escrow were defrauding him by means of a second transaction of which he was not aware.” Such is not the situation in the case at bench.
 

 Turning to the printed form of the escrow instructions in the instant case, we note that same confirm the conclusion reached above that no change in the instructions shall be effective unless the request therefor is in writing signed by all parties affected thereby. However, the instructions also provide that in the event “conflicting demands are made or notices served . . . the parties hereto expressly agree that you [escrow
 
 *171
 
 holder] shall have the absolute right at your election . . .: [to] withhold and stop all further proceedings ... or file a suit in interpleader.. . .”
 

 The bank argues that, under this provision of the escrow contract, it had the option and thus the right to close the escrow in accordance with the written instructions of the parties without reference to the Isla letter. We do not agree. The argument emphasizes the exculpatory nature of this provision of the contract and seeks to avoid any charge of negligence by reference thereto. In
 
 Akin
 
 v.
 
 Business Title Corp.,
 
 264 Cal.App.2d 153 [70 Cal.Rptr. 287], the escrow agent sought immunity from liability under an exculpatory provision in the escrow contract. It had improperly recorded the subject mortgage in Los Angeles rather than Orange County. In holding the exculpatory clause ineffective the court said at pages 158-159: “While the general rule still is that an exculpatory clause relieving individuals of liability for their own ordinary negligence does not contravene public policy
 
 (Werner
 
 v.
 
 Knoll
 
 (1948) 89 Cal.App.2d 474 [201 P.2d 45]), a ‘contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a “take it or leave it” basis carries some consequences that extend beyond orthodox implications.’
 
 (Gray
 
 v.
 
 Zurich Ins. Co.
 
 (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 105, 419 P.2d 168].)'Where the public interest is affected the exculpatory clause will be held invalid. (See
 
 Tunkl
 
 v.
 
 Regents of the University of California, supra
 
 (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].)”
 

 We construe the Isla letter in the instant case to be a written notice of a “conflicting demand[s]” within the meaning of this paragraph of the instant escrow agreement. The bank’s argument to the contrary must fail since any ambiguity in this provision would have to be construed against the party preparing the exculpatory clause, namely, the bank. While it is true the bank had an option to hold up or interplead, it did not have a right to ignore these options and blindly close the escrow without making a reasonable effort to determine the correctness of the instructions prepared by it on behalf of these illiterate sellers. We conclude that a reasonable construction of the escrow instructions required the bank, upon receipt of the Isla letter, to at least hold up closure until the situation was clarified. (Cf.
 
 Cohn
 
 v.
 
 Gramercy Escrow Co.,
 
 65 Cal.App.3d 884 [135 Cal.Rptr. 688].) The nature and extent of the duty, its breach if any, and the effect thereof, must be resolved in the instant case as questions of fact and not as questions of law on demurrer.
 

 
 *172
 
 In so holding, we are fully cognizant of the fact that the courts are not at liberty to revise an agreement or create a contract not made by the parties under the guise of liberal construction
 
 (Hinckley
 
 v.
 
 Bechtel Corp.,
 
 41 Cal.App.3d 206, 211 [116 Cal.Rptr. 33]) and express no view as to the merits of the action against any of the defendants including United California Bank.
 

 We are not impressed with the argument that the procedure suggested by this opinion does violence to the desirability and need for certainty and expediency in the handling of escrowed transactions or that it creates a dilemma for the escrow holder fostering potential litigation for its failure to follow its instructions. Certainty and expediency are only valuable when accompanied by a full recognition of the legal duties and exercise of the responsibilities applicable to the undertaking.
 

 The order of dismissal is reversed.
 

 Cobey, J., and Potter, J., concurred.
 

 [1]
 

 “At the outset, it is well settled that a general demurrer admits the truth of all material factual allegations in the complaint
 
 (Flores
 
 v.
 
 Arroyo, 56
 
 Cal.2d 492. 497 [15 Cal.Rptr. 87, 364 P.2d 263]); that the question of plaintiff's ability to prove these
 
 *164
 
 allegations, or the possible difficulty in making such proof does not concern the reviewing court
 
 (Katenkamp
 
 v.
 
 Union Realty Co.,
 
 6 Cal.2d 765, 769 [59 P.2d 473];
 
 Division of Labor Law Enforcement
 
 v.
 
 Barnes,
 
 205 Cal.App.2d 337, 346 [23 Cal.Rptr. 55]); and that plaintiff need only plead facts showing that he may be entitled to some relief
 
 (Vanoni
 
 v.
 
 Western Airlines,
 
 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115]).”
 
 (Alcorn
 
 v.
 
 Anbro Engineering, Inc.,
 
 2 Cal.3d 493, 496 [86 Cal.Rptr. 88. 468 P.2d 216]; see also
 
 Gruenberg
 
 v.
 
 Aetna Ins. Co., 9
 
 Cal.3d 566. 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)