[Civ. No. 31353. Second Dist., Div. Three. July 17, 1968.]

ANDOVER LAND COMPANY, Plaintiff, Cross-defendant and Appellant, v. WALTER W. HOFFMAN et al., Defendants, Cross-defendants and Appellants; EDWARD HARUO YOSHIKAWA et al., Defendants, Cross-complainants and Appellants.

Richards, Watson & Hemmerling and Robert L. Hitchcock for Plaintiff, Cross-defendant and Appellant.

Nordman, Cormany, Hair & Compton and Robert L. Compton for Defendants, Cross-defendants and Appellants.

Rutan & Tucker and Howard F. Harrison for Defendants, Cross-complainants and Appellants.

SHINN, J.*—January 8, 1964, Walter W. Hoffman and Andover Land Company, a corporation, established an escrow with Title Insurance and Trust Company in Santa Ana (to be referred to as Title Insurance) in which Andover promised to deposit in escrow $325,000 to be paid to Hoffman for a deed to a 50-acre lemon grove, owned by Hoffman, located in Ventura County and Hoffman promised to deposit into escrow a deed to the Ventura County land in favor of Andover to be delivered upon receipt of $325,000. The escrow instructions constituted the only agreement between Hoffman and Andover.

January 8, 1964, Andover entered into a written agreement with Edward Haruo Yoshikawa to exchange the Hoffman land plus $13,000 for 12 acres owned by Yoshikawa in Orange

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

County. The parties opened an escrow with Orange County Title Company. The agreement was deposited in the escrow with appropriate instructions for consummation of the exchange through the escrow. In the Andover-Hoffman escrow it was provided that closing of the escrow was to be "concurrent and contingent upon closing of" the Andover-Yoshikawa escrow and the latter was made contingent upon closing of the Andover-Hoffman escrow.

The Andover-Hoffman escrow was not consummated and the Andover-Yoshikawa escrow necessarily failed. Andover sued Hoffman and his wife and Yoshikawa and his wife seeking specific performance of each contract, or in the alternative, damages. Yoshikawa and his wife sued the Hoffmans and Andover, by cross-complaint, for specific performance of each contract, or in the alternative, damages.

At the trial the plaintiff and the cross-complainants abandoned their claims for specific performance and stood upon their demands for damages. The Yoshikawas withdrew their claim against Andover for damages.

In the trial the court determined that the two escrows constituted a single contract; the Hoffmans breached their contract and in so doing acted in bad faith; the Hoffman land was worth $350,000, the Yoshikawa land was worth $338,000; Andover was not damaged by its failure to get the Hoffman land; the Yoshikawas were damaged in the amount of $25,000 by Hoffman's breach of his contract with Andover, and judgment in that amount against the Hoffmans was given the Yoshikawas.

The Hoffmans (to be mentioned in the singular) appealed, claiming they did not breach their contract and that, in fact, Hoffman rescinded it for cause. Andover appealed, claiming there were two separate contracts and that it should have been awarded the damages for Hoffman's breach of its agreement with him. Yoshikawas (to be mentioned in the singular) appealed but dismissed their appeal and urge affirmance of the judgment.

Briefs have been filed by all parties and numerous questions of law have been fully and ably argued.

There are two phases of the litigation. In the first the question is whether the Hoffmans breached their agreement; in the second phase the question is whether Andover or Yoshikawa should recover damages, if any. We have concluded that the Hoffmans did not fail to comply with their contract and that

the award of damages was in error. Therefore we do not reach the Andover-Yoshikawa controversy.

■ The basis of the judgment is the court's finding that Hoffman breached his contract with Andover in failing to comply with the escrow instructions. Hoffman claims he did comply although it is clear that he does not understand what constituted compliance. Upon this issue the facts were undisputed. They establish beyond question that Hoffman did comply with the escrow instructions, did not breach his contract with Andover, and that the finding to the contrary is without support in the evidence. The judgment must be reversed.

In the consideration of the question of the alleged breach of the contract by Hoffman a fact of first importance is that the escrow instructions constituted the entire and the only contract between Andover and Hoffman.

Contracts of sale consisting entirely of escrow instructions constitute a common but special class of contracts. Performance consists of furnishing the money and the documents which the respective parties promise to deposit with the escrow holder, within the time and upon the conditions stipulated in the instructions.

Time is usually made of the essence of performance, as it was in the Andover-Hoffman escrow, and strict compliance is required. (*Todd* v. *Vestermark,* 145 Cal.App.2d 374 [302 P.2d 347].)

■ In a sale transaction the escrow holder is, initially, the agent of the buyer with respect to the money and the agent of the seller with respect to the deed. If the instructions are sufficient when carried out to effectuate the sale, and if they have been fully complied with, the escrow holder becomes the agent of the seller with respect to the money and the agent of the buyer with respect to the deed.

■ When the escrow is ready to close in accordance with the instructions, the escrow holder has a strict duty to close it by delivering or recording instruments and paying the money in accordance with the instructions. (*Amen* v. *Merced County Title Co.,* 58 Cal.2d 528 [25 Cal.Rptr. 65, 375 P.2d 33].)

■ When all conditions of the instructions have been complied with an equitable title to the money vests in the seller and an equitable title to the property vests in the buyer. (*Todd* v. *Vestermark, supra,* 145 Cal.App.2d 374.) So it was with the Andover-Hoffman escrow.

Yoshikawa did not want to sell his land for cash; he wanted to exchange it for agricultural land. Andover wished to acquire Yoshikawa's 12 acres. When the Hoffman land

became available to Andover for a cash consideration, negotiations were carried on for several months before the three-cornered deal was worked out. These negotiations are fully described in the briefs but in our opinion they do not bear upon the question of Hoffman's alleged failure of performance. Our discussion will be limited to the Andover-Hoffman escrow, to what it was and what happened to it.

When the three-party transaction had been orally agreed upon, Hoffman contacted Ralph L. Bailey who was the representative of Title Insurance in Ventura. Hoffman's contract with the Santa Ana office was handled by Mr. Lassiter, chief escrow officer.

Escrow instructions were signed by Andover and Mr. Hoffman and delivered into the escrow. A deed which conformed to the instructions was prepared by Lassiter and was sent to Bailey. It was Hoffman's intention to except from his deed one-eighth of the mineral rights and Bailey was aware of this fact. He noted the omission and added the exception. Hoffman and his attorney had overlooked the fact that the instructions that had been signed did not provide for the exception of one-eighth of the mineral rights. February 6, 1964, an amendment to the instructions was prepared by Bailey to call for a deed containing the exception.

The escrow was to close February 11, 1964. The Hoffmans executed the deed, as corrected, and the amendment to the instructions, and they were sent to the escrow at Santa Ana where they were received February 7th. Copies of the amendment with a letter from Lassiter were promptly delivered by messenger to Mr. Palmer of Andover, but he refused to sign the amendment.

On February 11th the condition of the escrow was that Andover had not deposited any money and Hoffman had not deposited a deed which conformed to the original instructions and had not deposited a written consent of Andover to accept a deed which contained the exception.

On February 13th the condition was the same. Hoffman inquired of Bailey whether Andover had deposited its money and was informed that the money had not been deposited. Hoffman assumed that the amendment to the instructions was acceptable to Yoshikawa, who would ultimately acquire the property, because Hoffman's intention to include the exception was known to Yoshikawa during previous negotiations. Hoffman consulted his attorney and was advised that he had a right to demand the return of his deed because of the failure

of Andover to deposit the purchase money. Hoffman then prepared and on February 14th sent to the escrow the following: "regarding Escrow No. 372658-MGL, Sr., the escrow not now being in a condition to close through no fault of our own, we hereby demand the return of our documents as follows:

Deed to 50 acs of a portion of Subdivision 65 of the Rancho El Rio de Santa Clara o' La Colonia

50 shares Revolon Drainage Corp. stock

50 shares, Oxnard Mutual Water Co. stock

Federal Aviation Agency lease

Bank of America Contract No. RL 1-23014

*Please give such notices as may be required.*" (Italics added.)

This demand was followed by a letter of February 17th from Hoffman's attorney requesting that no further action be taken in the escrow and that Hoffman's deed not be recorded. The demand, with a letter from Bailey, reached the escrow and on February 17th a copy of the demand with a letter from Lassiter was at once sent to Andover and a copy to Yoshikawa. February 19th Andover sent a telegram to Hoffman advising that Andover was prepared to go through with the escrow and would deposit its money at 2:30 that afternoon "upon proof that the escrows are in fact ready to close." Upon the advice of his attorney, Hoffman did not reply to the telegram.

In the afternoon of February 19th Mr. Miller, for Andover, tendered to Lassiter a cashier's check for $325,000 and a copy, signed by Andover, of the amendment to the instructions. Lassiter refused to accept either the money or the amendment. Miller remained in Lassiter's office and demanded that the escrow be closed. Lassiter gave him a written statement that the tenders were refused in accordance with legal advice. There was no further communication in the matter between Andover and Hoffman. Lassiter subsequently returned Hoffman's deed to Bailey with authority to deliver it to Hoffman.

In the trial an effort was made to prove by Lassiter that the escrow was not ready to close because there was lacking an assumption by Andover of a certain contract for the purchase of wind machines on the Hoffman property. This was a belated and spurious excuse for not closing the escrow. In their instructions Andover and Yoshikawa each specifically assumed the contract. The instructions called for no other agreement.

Lassiter refused to accept the tenders of Andover under the belief they were not timely. This was a mistake.

It is our opinion that Hoffman rendered performance when the amendment to instructions signed by Andover was tendered to the escrow approving the deed which contained the exception, and that Andover rendered performance by making its tenders of the money and acceptance of the amendment to the instructions.

In light of the foregoing facts the escrow was ready to close on February 19th and the escrow holder had a clear duty to accept the tenders made by Andover, and close the escrow. The instructions contained the following: ''Time is of the essence of these instructions. If this escrow is not in condition to close by February 11, 1964, any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property; but if none have complied, no demand for return thereof shall be recognized until five days after the escrow holder shall have mailed copies of such demand to all other parties at their respective addresses shown in the escrow instructions. If no such demand is made, close this escrow as soon as possible.''

The court made the following findings:

## ''XXIV

''On February 19, 1964, Andover Land Company tendered and deposited with said Title Insurance and Trust Company escrow the executed amendment and the full purchase price with the escrow holder.

## XXV

''The Title Insurance and Trust Company escrow would have been in a condition to close on February 19, 1964, following the tender and deposit by Andover Land Company, except for the presence in escrow of the Hoffmans' demand for return of their documents.

## XXVI

''On February 14, 1964, and at all times thereafter, defendants Walter W. Hoffman and Sheila Bergin Hoffman failed and refused to permit closing of the Title Insurance and Trust Company escrow, and failed and refused to perform said agreement.

## XXVII

''That the failure and refusal to perform said agreement on the part of the defendants, Walter W. Hoffman and Sheila Bergin Hoffman, was in bad faith.''

Insofar as the court found that Andover and Hoffman had fully complied with their promises evidenced by the instructions the findings were correct. In finding that Hoffman "failed and refused to perform said agreement" the court committed error. Neither Hoffman's demand for the return of his deed nor the request of his attorney was a violation of Hoffman's agreement, nor did either furnish a reason for not closing the escrow. The rights of the parties were defined in the instructions. On February 14th, since Hoffman and Andover were both in default Hoffman had a right under the instructions to demand the return of his deed, but Title Insurance could not return it. It had a duty to notify Andover of the demand, and it understood what its duty was in that respect and performed it.

The provision of the instructions under which Hoffman and Title Insurance acted is a time honored one in the printed instructions of escrow holders. The identical provision was interpreted by the court in *Weisberg* v. *Ashcraft*, 223 Cal. App.2d 793, 796 [36 Cal.Rptr. 188], as follows: "The clear purpose of the requirement of notice from the escrow holder if neither party had complied with his instructions was to give the parties an opportunity to comply within a five-day period. If, on July 2, the escrow holder mailed to plaintiffs a notice of defendants' attempted cancellation, plaintiffs fully performed by handing in their money and note and trust deed before the expiration of the five days. The attempted cancellation of the escrow by defendants was ineffectual. Defendants were in default until plaintiffs agreed to accept an imperfect title. When plaintiffs waived the imperfection and deposited their money and documents the agreement became enforceable at the instance of either party."[1]

Hoffman and his attorney were well aware of this provision of the instructions, and Hoffman's demand closed with "Please give such notices as may be required." On February 17th Title Insurance knew the money had not been deposited, that the amendment had not been accepted by Andover, and correctly construed the demand for the deed as a demand that notice be given Andover. It was so understood by Andover. It served the only purpose it could have served; it extended for five days the time, after notice given, for complying with the respective instructions. When Andover

---

[1] The case is not cited by Hoffman, who is the only party who could benefit from the court's interpretation of the particular provision of the escrow instructions. The case is cited in the closing brief of Andover. It was not called to the attention of the trial court.

responded by offering to perform, the Hoffman demand became so much waste paper and useless for any further purpose. Making the demand was not in violation of any promise or obligation of Hoffman; it was strictly within his rights as defined in the instructions. It is true he did not know the condition of the escrow at the time and whether the result of the demand would be the return of his deed or only the giving of the required notices, as he requested, but that was a decision to be made by the escrow holder according to the condition of the escrow.

The briefs contain learned discussions of numerous legal problems, but we have not found in them any plausible theory as to how Hoffman breached the contract. We find statements such as the following: "A copy of the telegram had been sent to and received by Mr. Hoffman, *but having previously asked for his deed and other documents back,* he refused to go forward with the transaction." "his willful failure and refusal to convey the property after Andover had made a timely tender of a cashier's check of $325,000"; "On February 14, 1964, the Hoffmans submitted a demand for cancellation *which allowed the other parties five days to perform.* On February 19, 1964, the amendment to escrow was accepted and the money deposited, *placing the escrow in a condition to close,* but the Hoffmans wrongfully refused to perform."; "the oral evidence and documents clearly disclose that *there was no attempt to rescind, but rather an attempt to cancel pursuant to the escrow instructions*"; "The Title Insurance and Trust Company *Escrow Was in a Condition to Close on February 19, 1964.* . . . It should be initially pointed out that whether the escrow was in condition to close or not, the Hoffmans had already breached the escrow and the tender by Andover was refused." (Italics added.)

Thus, in the briefs of respondents a wholly erroneous effect is given to Hoffman's demand. It is not questioned that when both parties were in default Hoffman had a right to demand the return of his deed, a right to have the escrow holder give notice to Andover and a right to have his deed returned unless Andover complied within five days thereafter. They say Hoffman refused to comply after Andover had deposited its money and had notified him of that fact. The court found it was a breach of the agreement for Hoffman to demand the return of his deed, although the demand would be of no force or effect if Andover and Hoffman both rendered performance within five days after Andover was given notice, and even

though within that time they both did render full performance. This was error.

When Hoffman received the telegram he consulted his attorney and was advised correctly that no further action upon his part was necessary and he did nothing but wait to see what would happen. There was nothing he could do to prevent compliance by Andover as promised in the telegram. Strangely enough, nothing constructive happened after Andover made its tenders.[2]

If the escrow holder had performed its duty the escrow would have been closed, Hoffman would have found himself in possession of $325,000, Yoshikawa would have had title to the lemon grove, plus $13,000 and Andover would have had title to the Yoshikawa 12 acres. How can the quiescent Hoffman be held responsible for the derelictions of Title Insurance? As previously shown, the answers to this question offered by respondents are unacceptable.

We decide only that Hoffman and his wife did not breach their contract to sell their property and that the judgment cannot stand.

The judgment is reversed; appellants Hoffman shall receive their costs of appeal from Andover Land Company, Yoshikawas to stand their costs of appeal.

Ford, P. J., and Cobey, J., concurred.

The petitions for rehearing were denied August 15, 1968. Ford, P. J., was of the opinion that the petitions should be granted. The petitions of appellant Andover Land Co. and appellants Yoshikawa et al. for a hearing by the Supreme Court were denied September 11, 1968.

[2] The findings imply that the Andover-Yoshikawa escrow was ready to close contemporaneously, with the closing of the Andover-Hoffman escrow. The record supports this implied finding and there is no contention to the contrary.