[Civ. No. 947.   Fifth Dist.   July 18, 1968.]

JAMES W. LEE et al., Plaintiffs and Appellants, v. TITLE INSURANCE AND TRUST CO. et al., Defendants and Respondents.

Lee & Hertzer and Theodore B. Lee for Plaintiffs and Appellants.

Greig A. Gowdy and Landels, Ripley, Gregory & Diamond for Defendants and Respondents.

GARGANO, J.—Appellants brought this action for fraud, breach of contract, breach of trust and malpractice to recover

damages resulting from a real estate transaction in which they purchased certain improved real property in Stockton, California. Respondents, Title Insurance and Trust Co. of Stockton, and its employee, John Roscelli, were the escrow holders in this transaction. Initially, respondents were named in several of the eight causes of action stated in appellants' complaint. However, respondents demurred to each cause of action and their demurrer was sustained. Afterwards, when appellants failed to amend, these causes of action were dismissed as against respondents.

Subsequently, plaintiffs filed an amended complaint stating an entirely new and separate ninth cause of action against respondents.

Respondents demurred to appellants' amended complaint and the ninth cause of action, and this time the court sustained their demurrer without leave to amend. Appellants appeal from this judgment of dismissal.

For the ninth cause of action appellants alleged: (1) Respondents knew that the $135,000 first trust deed against the real property which appellants purchased secured only a $100,000 loan but failed to notify appellants of this fact. (2) Respondents knew that the other defendants named in appellants' complaint were defrauding appellants in connection with the real estate transaction which respondents were handling in escrow but also failed to inform appellants of these facts.[1]

The only question presented here is whether respondents were under the obligation to notify appellants of the facts to which plaintiffs alluded in their complaint, assuming (as we must in the case of a demurrer) that they were aware of these facts. The gravamen of the ninth cause of action is respondents' failure "to disclose." Significantly, appellants neither contend or alleged that respondents misrepresented any of the facts connected with the escrow itself nor did they allege that respondents colluded with the other defendants to defraud plaintiffs or in any way participated in or were parties to the fraudulent acts attributed to these

---

[1]Appellants alleged that respondents knew that the other defendants were defrauding plaintiffs in the particulars set forth in plaintiffs' third and fourth causes of action. In the third cause of action plaintiffs inter alia accused the other defendants of conspiring to defraud plaintiffs for the purpose of selling the plaintiffs the real property referred to in the complaint at a price much greater than the price for which the property could be acquired. In the fourth cause of action plaintiffs alleged that

defendants.[2] Moreover, they did not allege that respondents were negligent in the handling of the escrow or failed to carry out their specific escrow instructions.[3] Put abstractly, the crucial question is whether an escrow holder is under a fiduciary duty to go beyond the escrow instructions and to notify each party to the escrow of any suspicious fact or circumstance which has come to his attention before or during the life of the escrow which could conceivably affect such party even though the fact or circumstance is not related to his specific escrow instructions.

Generally speaking, an "escrow" is a transaction in which one person, for the purpose of effecting a sale, transfer or incumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions (18 Cal.Jur.2d, Escrows, § 2, p. 303; Civ. Code, § 1057). Thus, according to one view, the escrow holder is not the agent of either party; he is merely a third party depository (30 A. C.J.S., Escrows, § 8, p. 985; 28 Am.Jur.2d, Escrow, § 10, p. 15). However, an escrow holder has also been referred to as the agent of all the principals to the escrow. But even so, the agency is not considered a general one. On the contrary, it is treated as a limited agency wherein the obligations of the escrow holder to each party are strictly in accordance with the escrow instructions given by that party (*Blackburn* v. *McCoy*, 1 Cal.App.2d 648, 655 [37 P.2d 153]; 18 Cal.Jur.2d, Escrows, § 17, p. 330).  ▆ Con-

the other defendants falsely and fraudulently promised plaintiffs that they would obtain tenants and the necessary financing to acquire and remodel the real property referred to in the complaint in order to induce plaintiffs to purchase the property.

[2] Respondents had apparently escrowed the transaction between the other defendants relating to the $135,000 trust deed. Appellants merely alleged respondent Roscelli prepared the $135,000 deed of trust and assignment papers for that transaction. Presumably this is how respondents acquired knowledge of the allegedly usurious transaction. However, it must be emphasized any allegations of causes of action for respondents' complicity in the other defendants' schemes are not before us because the respondents successfully demurred to the first eight causes of action, and the ninth cause of action only realleges matters in parts of the first eight to show that respondents knew of the other defendants' acts, not tc show any participation in those acts.

[3] The escrow instructions were in the usual form and in essence required respondents to receive payments and deliver documents in the real estate transaction, issue a policy of title insurance, secure fire insurance and give a bill of sale to the buyer.

sequently, under both views it is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions (*Carlsen* v. *Security Trust & Sav. Bank,* 205 Cal. 302 [271 P. 104] ; *Southall* v. *Security Title Ins. etc. Co.,* 112 Cal.App.2d 321 [246 P.2d 74] ; *Harriman* v. *Tetik,* 56 Cal.2d 805 [17 Cal.Rptr. 134, 366 P.2d 486] ; *Rost* v. *Bryson,* 118 Cal.App.2d 489 [258 P.2d 72] ; 30 A. C.J.S., Escrows, § 8, p. 992).

With these principles in mind, we conclude that the trial court correctly held that appellants' ninth cause of action against respondents did not state a cause of action and properly sustained respondents' demurrer without leave to amend. In fact, under the proposed rule, once an escrow holder received information (from whatever source) he would be forced to decide independently whether to believe the information and disclose it or disbelieve it and conceal his knowledge. If he concealed his knowledge he would risk suit. If he discloses and the information is inaccurate, he may be sued by all parties to the escrow for interfering with their contract.[4] Establishing a rule which would create such a dilemma and subject the escrow holder to a high risk of litigation would damage a valuable business procedure. Manifestly, appellants' contention, if adopted by judicial fiat, would effectively discourage a reasonable and prudent man or company from acting as an escrow holder and would ultimately defeat the very purpose for which escrows originated.

An essentially similar question was presented to the appellate court in *Blackburn* v. *McCoy, supra,* 1 Cal.App.2d 648. There the court held that an escrow holder in an escrow for the sale of land was under no duty to disclose to the buyer the fact that the seller was purchasing the land from the record owner in the same escrow and reselling it to the buyer at a substantial profit where the buyers' escrow instructions did not include any demand for such information. The court at page 654 succinctly stated:

---

[4]For example, in the fourth cause of action of appellants' complaint appellants allege that the other defendants falsely and fraudulently promised appellants that they would obtain tenants and the necessary financing to acquire and remodel the subject real property in order to induce appellants to purchase the property.

Thus, if respondents had informed appellants of these facts, and if it was later discovered that their information was inaccurate, they would have subjected themselves to multiple lawsuits.

"There seems to be a divergence of opinion in the books as to whether the status of an escrow holder is that of an agent or trustee for the parties to the escrow. Conceding that the escrow instructions created an agency in the defendant Title Guarantee and Trust Company for the several parties to the escrow, as contended for by appellant Blackburn, it would not be a general agency for each one of the parties because their interests were conflicting. The status could only properly be classified as an agency on the theory that there was a limited agency as to each party to the escrow, whereby the duties and obligations owing by the escrow holder to each would not conflict with the duties it owed to the others. The usual purpose that prompts the creation of an escrow is the desire of persons dealing at arm's length with each other to have their conflicting interests handled by one person in such a manner as to adequately protect the rights of each of the parties to the transaction. The fundamental principles underlying the obligations of a general agency would not, and could not, tolerate the operation of an escrow, such as we have here, as a general agency. If the several escrow instructions create in the escrow holder an agency, it must be one limiting the obligations of the escrow holder to each party to the escrow in accordance with the instructions given by such party. This in practice has been and is the underlying principle that has made possible the development of the escrow method of handling transactions which has become such an important factor in conveyancing and other business activities. Upon this theory, it has been given almost universal judicial sanction in this and other jurisdictions. This theory of limited agency finds support in the following cases: [Citations]."

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 23, 1968.