[Civ. No. 45167. Second Dist., Div. Four. May 29, 1975.]

LEONARD GORDON, Plaintiff and Appellant, v.
D & G ESCROW CORPORATION, Defendant and Respondent.

**COUNSEL**

Fierstein, Sturman & Schulman and Harvey Fierstein for Plaintiff and Appellant.

Stanley P. Piser for Defendant and Respondent.

**OPINION**

**COLE, J.**\*—Plaintiff, Leonard Gordon, together with his estranged wife, Velina (not a party hereto) opened an escrow at defendant's offices on September 19, 1969. The escrow called for the sale of certain real property (hereafter called the "Knollwood property" or "the property") to Mr. and Mrs. Nicholson. The parties agree and the court found that record title to the Knollwood property stood in Velina's name, the deed describing title as being in "Velina Parke Gordon, a married woman, as her sole and separate property." The deed to Velina from grantors named Pruitt was executed on April 2, 1966. On March 30, 1966, plaintiff executed a quitclaim deed in favor of Velina.

The escrow instructions, as originally signed, stated on a separate sheet that the escrow was contingent upon "seller acquiring title as his sole and separate property on/or before thirty days from date." The parties and the trial court treated the reference to "seller" in the foregoing condition as referring to plaintiff, Leonard Gordon, and not to his wife, Velina, although she, as well as he, signed the sellers' escrow instructions and the separate sheet.[1] On October 3, 1969, plaintiff and Velina, together with the buyers, signed written instructions removing the above condition from the escrow. The preliminary title report showed Velina to be the owner of the Knollwood property as a married woman and as her sole and separate property.

---

\*Assigned by the Chairman of the Judicial Council.

[1] A representative of the escrow company testified that plaintiff was the seller and not anybody else.

During the progress of the escrow and on or about October 20, 1969, defendant escrow company issued a check in the amount of $1,000 payable to plaintiff and Velina. Nine hundred dollars represented rental from the Knollwood property and $100 was applied towards the down payment by the buyer on the property. The check was endorsed by both plaintiff and Velina. Velina unilaterally instructed defendant escrow company to distribute the sales proceeds of the property directly to her. An attorney acting on her behalf, in her then pending divorce proceedings against plaintiff, wrote to defendant escrow company on or about October 31, 1969. The letter confirmed a telephone conversation in which the attorney had instructed defendant not to distribute any proceeds pending further directions. On or about December 3, 1969, defendant closed the escrow 17 days early and distributed the proceeds unilaterally to Velina, the sum being $10,925.51. Leonard was advised of this a few days after it happened, the escrow company apparently having mailed him a document containing the advice on or about December 1, 1969.

The court's findings indicated the following matters: thereafter the divorce (by that time an action for dissolution by reason of the enactment of the Family Law Act) between plaintiff and Velina proceeded. In her verified complaint filed prior to the opening of the escrow Velina alleged that the Knollwood property was community property. In answers to interrogatories plaintiff and Velina each claimed the Knollwood property was to be his separate property. Also in connection with the dissolution action plaintiff and Velina stipulated in 1971, prior to the filing of the within lawsuit, that personal property in the possession of either of them should be deemed to be the sole and separate property of the person then in possession. Counsel for plaintiff in the dissolution action, who also represents him in this litigation, executed a declaration in the dissolution proceedings that there was no remaining real or personal property held by either plaintiff or Velina which was subject to administration by the court (other than certain property not relevant hereto).

As a "conclusion of law," the court stated that "Plaintiff at no time had any interest in or title to the Knollwood property" and that plaintiff sustained no legal damages resulting from defendant's distribution to Velina of the net proceeds of the sale of the Knollwood property.

The complaint in the present action was in three counts, one alleging that defendant escrow company breached its contract with plaintiff and

another alleging defendant was negligent.[2] Based on the aforesaid conclusions, the court further concluded that plaintiff was not entitled to any recovery on those counts. Judgment was entered for defendant.

The presentation on appeal breaks into two parts. ■ The first is plaintiff's argument that the defendant escrow company breached its duty to him. The trial court made no findings at all on this subject. Defendant argues that because Velina was the title holder of record she had a "right" to receive the proceeds and that its actions did not amount to a breach of duty to Leonard.

We cannot accept this argument. It is clear to us that, absent express instructions to the contrary, an escrow company must disburse to the sellers the proceeds of the sale. It is also clear that an escrow holder must comply strictly with instructions of its principals and that, otherwise, it will be liable "for any loss occasioned thereby." (*Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 682 [30 Cal.Rptr. 658].)

The escrow instructions in the case at bench did not expressly state that the sellers were to be paid for selling the property. "An escrow holder must comply strictly with the instructions of the parties [citations omitted]. Upon the escrow holder's breach of an instruction that it has contracted to perform *or of an implied promise arising out of the agreement* with the buyer or seller, the injured party acquires a cause of action for breach of contract [citations omitted]. Similarly, if the escrow holder acts negligently, 'it would ordinarily be liable for any loss occasioned by its breach of duty' . . ." (Italics supplied.) (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 531-532 [25 Cal.Rptr. 65, 375 P.2d 33].) The sellers' instructions in the present case stated as follows: "The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred in by me. I will hand you necessary documents called for on my part to cause title to be shown as above, which you are authorized to deliver when you hold for my account the money $_____ within the time as above provided. You will, as my agent, assign any fire and other insurance of mine handed you or that Beneficiaries inform you they hold. Affix U.S. Revenue Stamps on Deed as required. Pay your escrow charges, charges for sending in offset statements and beneficiaries' statements and/or demands, my recording fees, charges for evidence of title as called for

---

[2]A third count (labelled as the second cause of action in the complaint) charged that defendant "converted" a deed to the property which belonged to plaintiff. The court also denied recovery under that count. The findings are silent regarding this deed.

whether or not this escrow is consummated, except those the buyer agree [*sic*] to pay. When property being conveyed is held in Joint Tenancy any cash received therefrom in this escrow shall be Joint Tenancy funds. Pay any encumbrances necessary to place title in the condition called for and the following. [¶] Pay commission as follows: $_____ to _____, $_____ to _____, $_____ to _____, $_____ to _____. [¶] Escrow is hereby authorized and instructed to pay in full all demands or liens of record, including costs and charges if any, without further approval and/or authorization from the undersigned sellers."

It is also the law that ". . . if [the escrow instructions] have been fully complied with, the escrow holder becomes the agent of the seller with respect to the money . . . . [¶] When the escrow is ready to close in accordance with the instructions, *the escrow holder* has a *strict duty* to close it by delivering or recording instruments and *paying the money* in accordance with the instructions. . . ." (Italics supplied.) (*Andover Land Co.* v. *Hoffman* (1968) 264 Cal.App.2d 87, 90 [70 Cal.Rptr. 38].) Based on these principles and on the record presented on this appeal, we hold that defendant escrow company breached a duty to plaintiff to comply with the instructions and transmit to both sellers the proceeds of the sale. We do not intend this holding to control if evidence of contrary instructions should be received on retrial.

Plaintiff urges, citing *Spaziani, supra,* 215 Cal.App.2d 667, and other authorities, that an agent has a duty to exercise ordinary care to communicate to his principal knowledge acquired in the course of his agency with respect to matters pertaining to it. *Lee* v. *Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160 [70 Cal.Rptr. 378], however, makes it clear that the agency of an escrow holder is a limited one. There an escrow holder was held to be under no duty to disclose to a buyer of real property that other parties to the escrow were defrauding him by means of a second transaction of which he was not aware. The limited agency concept is based on the principle "that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions." (*Lee* v. *Title Ins. & Trust Co., supra,* 264 Cal.App.2d at p. 163.)

Because of this decision and because of the language in the escrow instructions in this case that "You shall be under no obligation or responsibility for failure to inform me regarding any sale, loan, exchange or other transaction or facts within your knowledge even though the

same concern the property described herein, provided they do not prevent your compliance with these instructions. . . ." we do not place our holding that defendant breached its obligation to plaintiff on an abstract duty to notify. Rather, we rely on the principle that defendant escrow company simply failed to carry out its instructions which, impliedly if not expressly, called for the proceeds to be paid to the sellers.

■ This breach of duty does not automatically require reversal, however. We must determine whether the trial court correctly held that plaintiff had no interest in the property and was not damaged by the escrow company's conduct. As will be seen, the answer to this question revolves primarily around whether plaintiff proved as a matter of law that he had an interest in the property. Subordinated to this question are challenges made by plaintiff to the trial court's evidentiary rulings.

Given the array of opposing evidence the trial court reasonably could have concluded either way as to the separate or community nature of the property. Thus, the fact that record title was in Velina's name, by a deed describing her as a married woman and describing the property as her separate property supports a presumption that the property is her separate property. (Civ. Code, § 5110; former Civ. Code, § 164.) The stipulation entered into in the dissolution proceedings that "all of the personal property in the name or possession of each party to this proceeding be deemed to be the separate property of said party" would support a conclusion that the real property, by then transmuted into the proceeds derived from the sale, was her separate property. The declaration of husband's counsel that there was no remaining real or personal property subject to administration in the dissolution proceedings likewise would support such a conclusion. Conversely, the fact that wife listed the property in her original verified complaint for divorce as being of a community nature would support a conclusion that, despite the status of the record title it was community property. (*Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 133 [264 P.2d 626], disapproved on another point, *See* v. *See* (1966) 64 Cal.2d 778, 785-786 [51 Cal.Rptr. 888, 415 P.2d 776].) The fact that husband made a loan payment on the property in part from his separate funds, and then paid on the property from earnings after marriage would support a conclusion that the property was in part his separate property and in part was community property. (Civ. Code, §§ 5108, 5110.) Factually, then, this record could support the conclusion reached by the trial court, as well as opposing conclusions. We, of course, cannot choose one over the other.

The question then resolves itself to issues of the trial court's rulings on evidence which plaintiff proposed to offer. We conclude that error occurred in at least one instance, that it was prejudicial and that reversal is accordingly required. In essence, plaintiff made offers to prove that at various times Velina acknowledged in conversations with him that the property was in reality community. This evidence was excluded on the ground that it was hearsay. Three arguments are now made regarding its admissibility.

■ First, plaintiff contends that the trial court erred in holding that plaintiff had failed to establish the requisite due diligence necessary to show Velina's unavailability as a witness, so as to allow the testimony to be received as a declaration against interest. Such unavailability is a predicate to admissibility of a declaration against interest under Evidence Code, section 1230. Unavailability, in the present circumstances, may be established if the declarant is "[a]bsent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process." (Evid. Code, § 240, subd. (a) (5).) "Whether due diligence has been shown is a factual question. . . . Unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed. . . ." (*People* v. *Smith* (1971) 22 Cal.App.3d 25, 32 [99 Cal.Rptr. 171]; *People* v. *Cavazos* (1944) 25 Cal.2d 198, 200-201 [153 P.2d 177].)

"What constitutes due diligence to secure the presence of a witness depends upon the facts of the individual case. . . . It has been said that the word 'diligence' connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. . . . The totality of efforts of the proponent to achieve presence of the witness must be considered by the court. . . ." (*People* v. *Linder* (1971) 5 Cal.3d 342, 346-347 [96 Cal.Rptr. 26, 486 P.2d 1226].)

We examine the evidence offered by plaintiff on the subject of his diligence with the foregoing rules in mind. Plaintiff testified that it had been three years since he had spoken to his wife. He tried to locate her unsuccessfully *shortly after the last time he spoke to her* (i.e., almost three years ago). Two years previously, he was told that she was in Idaho. He wrote to her about one and one-half years before the trial. The letter was not returned. She had his son in her custody. He made no effort to locate her for the last one and one-half years. Plaintiff's counsel testified that he last saw Velina in May 1972 (the trial was in January 1974) at which time she lived on Balboa in the San Fernando Valley. "Subsequently" a letter

was returned. He subsequently found out her home had been foreclosed. Five creditors made inquiry of counsel as to her whereabouts. In five lawsuits wherein he represented the present plaintiff as a defendant, Velina was also named as a defendant but had not been served with process. Within two or three months prior to trial he had unsuccessfully checked telephone directories for her address. Finally, there was received in evidence by reference a declaration of *defendant's* counsel, filed in May 1973, in opposition to trial setting, and stating unavailing efforts of that counsel to locate Velina.

Given this evidence, we cannot say that the trial court abused its discretion in ruling that unavailability of Velina had not been established. The efforts listed were all "stale," with the possible exception of the telephone directory check (itself, not enough to demonstrate effort of a substantial character). Certainly, there were no persevering and untiring efforts, contemplated by some of the cases.

Second, plaintiff now urges that the evidence was admissible under Evidence Code, section 1225. This section is not applicable here. It allows, under a theory of vicarious admission (Witkin, Cal. Evidence (2d ed.) p. 495), statements of a declarant, whose right or title is in issue, to be admitted *against* a party claiming as the successor of the declarant. (*Cullen* v. *Spremo* (1956) 142 Cal.App.2d 225, 230 [298 P.2d 579].) Plaintiff wanted to introduce the evidence against defendant escrow company, not against a successor to Velina.

Finally, it is urged that the court erred in admitting into evidence only the portion of the stipulation in the dissolution proceeding referred to above. (See p. 623.) Counsel for plaintiff desired to give testimony of statements made by Velina at a meeting which she attended, together with plaintiff and counsel for plaintiff. Objection was made as to what was said at the meeting, on the ground of hearsay. Counsel for plaintiff first urged that the evidence could come in as not in violation of the parol evidence rule. He then countered the hearsay objection with the twice-repeated statement that his testimony concerning what was said at the meeting by Velina was not offered for its truth but simply to demonstrate that the statements were made, in order to show what was covered by the agreement. The court made clear that it understood that what plaintiff's counsel was seeking to do was to explain some of the circumstances surrounding the preparation of the stipulation by conversations relating to it. The court also said that it had no objection if the conversations did not run afoul of parol evidence or

hearsay concepts. Subject to a motion to strike counsel was then allowed to testify to his conversation with Velina. The thrust of this testimony was that Velina recognized that she had taken the proceeds of the Knollwood property, said she had none of the money left and listed various items of clothing, jewelry and the like which she had left in her possession. The court struck the testimony, stating that this evidence was proscribed by the parol evidence rule, and was offered for the truth of the statement.

At this point error occurred. As to the parol evidence objection, it was competent to attempt to show that the stipulation that "all of the personal property in the name or possession of each party" be deemed to be the separate property of said party was entered into only with reference to the property *then* owned by that party. "[I]n an action between one party to the contract and a stranger, both are at liberty to introduce evidence contradicting the terms of the writing." (Witkin, Cal. Evidence (2d ed.) p. 691.) Plaintiff did not even attempt to go that far. He merely wanted to explain or interpret the circumstances under which the stipulation was entered.

As to the hearsay objection, we believe that the attorney's testimony concerning his conversation with Velina was relevant to show that the stipulation was to be interpreted as applying only to personal property *then in possession* of plaintiff and Velina. Whether it was true or not true that Velina had none of the proceeds of the Knollwood property sale left, or that she was only possessed of various items of tangible personal property such as clothes and jewelry, her statement to that effect, made to counsel for plaintiff, reasonably could have a bearing on the meaning of the subsequent stipulation. The court could infer from the fact that such a statement was made to plaintiff and his counsel that the stipulation was intended to relate only to personal property then in their possession. Such an inference could be a logical and reasonable deduction from the fact of the statement. (Evid. Code, § 600, subd. (b).) We do not say that the inference had to be drawn, only that it could be. By striking the evidence, the court foreclosed itself from drawing that inference, if, as the fact-finder, it determined to do so.

We then must consider whether the exclusion of this testimony was prejudicial error. Under the circumstances, we hold that it was. We note that after being presented with conflicting versions, the trial court eventually drew its own findings of fact and conclusions of law. Among them was a finding referring to the part of the stipulation received into evidence. We cannot say that the stipulation was not determinative in

tipping the balance in the mind of the fact-trier regarding the state of title of the Knollwood property. For this reason we are of the opinion that the error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

The judgment is reversed.

Dunn, Acting P. J., and Jefferson, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.